500 A.2d 443

**COMMONWEALTH of Pennsylvania**

v.

**Byron G. HATHAWAY, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1984.

Filed Oct. 4, 1985.

136

138

John Alden, Wayne, for appellant.

Dennis C. McAndrews, Assistant District Attorney, Wayne, for Com., appellee.

Before SPAETH, President Judge, and BECK and TAMILIA, JJ.

BECK, Judge:

After a five day jury trial appellant Byron Hathaway was convicted on December 11, 1981 of the first degree murder of his wife, Bernadette, and possession of firearms without a license. Appellant timely filed motions for a New Trial and in Arrest of Judgment which the trial court overruled. Appellant subsequently filed a writ of Habeas Corpus alleging ineffectiveness of counsel and the trial court deferred the holding of a hearing on the Writ until the appellate court disposed of appellant's direct appeal. Upon review of appellant's post-verdict motions and the record, we find that the trial court properly denied his motions and that appellant's allegations of ineffectiveness of counsel are meritless. We deny his request to remand for a hearing.

After a brief description of the facts, we will turn to the discussion of appellant's post-verdict motions, and then his allegations of ineffectiveness of counsel.

On April 28, 1981, at approximately 8:45 a.m. at the Church of the Holy Apostle on Remington Road in Haverford Township, appellant met his estranged wife as she was leaving the Martessan School, conducted by the Church, having dropped off her and the defendant's son. After appellant and his wife talked for a short period of time appellant pulled out a .32 caliber pistol. Mrs. Hathaway attempted to run away, but the defendant pursued her and fired several shots at her, causing her to fall to the ground. Appellant walked over to the wife's body, reloaded the gun, placed the gun at her head and fired several more shots. Appellant returned to his car and drove several blocks until the police apprehended him.

At trial the issue of whether appellant shot his estranged wife was not in dispute. Rather, the issue of appellant's mental state at the time of the killing was contested. Appellant presented extensive psychiatric testimony to support his defense that as a result of intoxication and mental disturbances, he had a diminished capacity and thus, the inability to form the specific intent to commit first degree murder. The jury rejected his defense, and found him guilty of first degree murder.

Appellant's post-verdict motions consist of six trial court errors. We find them all to be baseless.

Appellant's first contention is that the trial court erred in denying his requests to voir dire prospective jurors about their possible bias concerning psychiatrists and psychiatric defenses, the use of handguns, prior service as jurors or witnesses in criminal trials and about a married or separated daughter who was the victim of violence at the hands of her spouse.

The single goal in permitting questioning of prospective jurors is to provide the accused with a competent, fair, impartial and unprejudiced jury. *Commonwealth v.*

*England,* 474 Pa. 1, 375 A.2d 1292 (1977). However, it is not intended to provide appellant with a better basis upon which to utilize his peremptory challenges. The inquiry should be strictly confined to disclosing qualifications or lack of qualifications and should focus on whether a juror has formed a fixed opinion as to an accused's guilt or innocence. *Id.* Furthermore, the scope of voir dire rests in the sound discretion of the trial judge and his or her decisions will not be reversed unless palpable error is established. *Commonwealth v. Sparrow,* 471 Pa. 490, 370 A.2d 712 (1977).

More specifically, appellant argues that the trial court erred in not permitting appellant to voir dire the jury on the subject of psychiatrists, psychiatric testimony, insanity or diminished capacity defense, state of mind, and psychological testing. It is in the trial judge's discretion to preclude questions probative of prospective juror's attitude toward the insanity defense, *Commonwealth v. Biebighauses,* 450 Pa. 336, 300 A.2d 70 (1973) and psychiatric testimony. *Commonwealth v. Johnson,* 452 Pa. 130, 305 A.2d 5 (1973). The trial court did ask the jurors questions concerning their biases against psychiatrists and psychiatric testimony. He inquired into whether they could follow the law on the application of psychiatric testimony. Since the court found that the jurors indicated they would not be biased in this regard, the court did not abuse its discretion in refusing to ask the more specific questions requested by appellant.

Appellant next argues that the trial court erred in refusing to permit voir dire regarding the prospective jurors' ownership of handguns or membership in an organization opposed to the ownership of handguns. A trial court's ruling on the scope of voir dire must always be considered in light of the factual circumstances of the particular case. *Commonwealth v. Fulton,* 271 Pa.Super. 430, 413 A.2d 742 (1979). Since appellant admitted he killed his wife with a handgun these issues were not in dispute and thus not to be decided by the jury. Therefore, the potential biases which

the defendant alleges he was unable to ascertain as a result of the trial court's refusal were not significant in this case. The alleged bias could potentially only affect the jurors' decision on appellant's guilt or innocence and since the jurors did not have to decide whether appellant shot his wife, the trial judge's refusal did not prejudice appellant.

■ Appellant's voir dire questioning regarding previous service on a jury panel was also properly rejected. It is well established that there is no reasonable correlation between the juror's prior jury service and his ability to render a fair and just verdict. *Commonwealth v. Johnson,* 452 Pa. 130, 305 A.2d 5 (1973). Furthermore, the trial court properly found no logical relationship and we find no cases holding that a relationship exists, between a juror's prior participation in a criminal case as a witness and potential bias concerning appellant's guilt or innocence.

■ Appellant's claim that the trial court erred in refusing to voir dire prospective jurors if they had a married or separated daughter who had been the victim of violence by her husband is equally meritless. The trial court asked whether any juror or member of his family or close friend had ever been a victim of violence (N.T.Vol. I 312a). This question is broader in scope than the question requested by appellant and obviously covers his concern about this type of bias or prejudice. Since the trial court then queried those jurors who answered positively to identify the victim's relationship to the juror, and none of the jurors responded that it was his or her daughter, the court did not need to ask the question requested by appellant.

■ Appellant's second contention deals with the manner in which the trial judge conducted the voir dire examination. He asked questions to the vernirepersons collectively after both counsel submitted proposed questions to him. Appellant complains that he was entitled to individualized voir dire to have his counsel, rather than the trial judge, ask the questions. Since the trial court has the discretion to determine in non-capital cases who will ask the questions and

whether the jurors will be asked individually or collectively, appellant's assertions are baseless.

Pa.R.Crim.P. 1106 further allows the trial judge to determine whether to question the venirepersons collectively or individually and the appellate courts in Pennsylvania have consistently approved the practice of collective voir dire. *See Commonwealth v. Dolhancryk*, 273 Pa.Super. 217, 417 A.2d 246 (1979); *Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976).

Furthermore, nothing in the record indicates that the juror's answers were influenced by the answers of the other prospective jurors. Appellant's assertion to the contrary is mere speculation.

■ This case differs significantly from *Commonwealth v. Johnson*, 440 Pa. 342, 343, 269 A.2d 752 (1979) where our Supreme Court found that the trial court abused its discretion in collectively questioning the jurors because in that case inflammatory pretrial publicity created the possibility that the jurors could be prejudiced. *Id.*, 440 Pa. at 350, 269 A.2d 752. There had been numerous newspaper articles and television broadcasts which contained details of the crime, appellant's name, picture and prior criminal arrest record, inflammatory remarks by the District Attorney and the Mayor of Pittsburgh, and subsequent criminal charges filed against appellant. By questioning the jurors collectively, the trial judge could ask the jurors only if they had heard any publicity about the case and not what they had heard because this information would infect the jurors who had not heard that part of the pre-trial publicity. As a result, appellant was unable to ascertain the degree of bias which arose as a result of the pervasive pre-trial publicity, and this information could have been easily ascertained if the trial court had questioned the jurors individually.

It must be stressed, however, that the existence of some pre-trial publicity does not mandate individual voir dire. *Commonwealth v. Smith*, 290 Pa.Super. 33, 434 A.2d 115 (1981), *Commonwealth v. Herron*, supra.

In the case before us, the record does not reflect the degree of pre-trial publicity which surrounded the appellant as in *Commonwealth v. Johnson,* supra, and we find no prejudice arising from the collective voir dire of the venirepersons.

Appellant's third contention is that the trial court erred in refusing to allow defense counsel to question Dr. Gerald Cooke, a psychiatrist and defense witness, about appellant's ability to control his actions at the time of the crime. We find the trial court properly excluded the following question which the defense asked Dr. Cooke:

> Based upon your interviews, observations and tests are you able to say with reasonable medical certainty whether or not Byron Hathaway was able to control his actions on April 28, 1981 at about 8:45 a.m. while he was with this weapon at the Holy Apostles Church? (emphasis added)

The question clearly relates to the irresistible impulse defense, a species of the insanity defense, *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976), which is not recognized in Pennsylvania.

Appellant was attempting to prove the diminished capacity defense and the question was not relevant to that defense. The diminished capacity defense assumes the defendant is sane but lacks the ability to form a specific intent to kill, and thus reduces the charge of first degree murder to third degree murder. *Commonwealth v. Walzack,* supra. The irresistible impulse defense is an insanity defense and involves considerations distinct from the diminished capacity doctrine. Therefore the judge properly found the question not to be relevant, *Commonwealth v. Walzack,* supra, and excluded it.

Appellant's fourth contention is that the court erred in refusing to charge that diminished capacity is a defense to third degree murder. In his charge he limited the applicability of the defense of first degree murder and voluntary manslaughter. Since diminished capacity is a

defense to crimes of specific intent, *Commonwealth v. Walzack,* supra., and murder of third degree is not a specific intent crime, *Commonwealth v. Hicks,* 483 Pa. 305, 396 A.2d 1183 (1979), the defense of diminished capacity is inapplicable, and the trial court's refusal was proper.

■ Appellant's fifth contention is that the court improperly charged the jury on the issue of malice. The appellant argues unpersuasively that the trial court's instruction that "malice may be either expressed by appellant or inferred from his words or conduct" shifts the burden of proof on the element of intent to appellant. This argument is baseless.

The use of the permissive inference in general and the inference of malice from the intentional use of a deadly weapon on a vital part of the body in particular, have been repeatedly upheld by the Pennsylvania's appellate courts. *Commonwealth v. Hinchcliffe,* 479 Pa. 551, 388 A.2d 1068 (1978) *cert. denied* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663, *Commonwealth v. Mason,* 483 Pa. 409, 397 A.2d 408 (1979). Even though the trial court's charge contained a permissive inference, the instruction did not negate the Commonwealth's burden of proving the element of intent beyond a reasonable doubt. It should be stressed that on numerous occassions the court instructed the jury that the burden of proof on the issue of intent remained with the Commonwealth. (N.T.Vol. III at 822a, 825a, 826a, 828d, 829a).

■ Appellant's sixth contention is that the trial court erred by refusing to instruct the jury during its charge that they may return a sympathy verdict of voluntary manslaughter whether or not the accused presents such a defense. Voluntary manslaughter is a permissible verdict whether or not evidence of provocation is introduced by either party. However, the trial court is not required to invite a jury to return this verdict merely out of sympathy. *Commonwealth v. Brown,* 273 Pa.Super. 468, 417 A.2d 743 (1979). Since the trial court was not required to instruct

the jury on a sympathy verdict, they did not err in declining to do so.

We now turn to appellant's allegations on the effectiveness of counsel. Appellant requests that we remand this case for a hearing on this issue. Since we can fully rule on appellant's allegations of ineffectiveness of counsel from the record in its present state, we deny his request for an evidentiary hearing. Furthermore, counsel will not be deemed ineffective for failing to raise baseless or frivolous issues. It is only when the claim which has been foregone is of arguable merit that further inquiry is made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983). In addition, appellant must show he was prejudiced by trial counsel's action or inaction. *Commonwealth v. Litzenberger,* 333 Pa.Super. 471, 482 A.2d 968 (1984). The appellant's allegations of ineffectiveness of counsel are plentiful. The purported instances of ineffectiveness are listed "A"—"R". We find the allegations meritless.

(A) Appellant contends that his counsel was ineffective in failing to introduce a medical doctor to explain to the jurors the meaning of the defense's stipulation that eight hours after the killing, appellant had a blood alcohol level (BAC) between .16 and .28. As a result, appellant argues the jury could not properly consider appellant's defense of diminished capacity. Appellant's trial counsel introduced a medical doctor, Dr. Harvey Bartle, Jr., who testified as to the effect of BAC between .16 and .28 on appellant. (N.T.Vol. I p. 190a). Further, Dr. Morgenstern testified that appellant could not have formed the specific intent at the time of the shooting because appellant was quite inebriated (N.T.Vol. I 163a through 164a). Thus, his counsel did introduce evidence of the meaning of BAC and this contention is baseless.

(B) Appellant's second contention is that his counsel was ineffective in failing to object to the trial judge's

instruction to the jury on the elements of possession (sic) and provocation in his charge of voluntary manslaughter. The trial judge in charging the jury on voluntary manslaughter defined the crime as an act committed by appellant intentionally without the specific intent to kill. (N.T. Vol. I p. 121a). The trial court did not indicate that voluntary manslaughter requires proof that the killing was done in the heat of passion. Appellant claims that his counsel was ineffective in not objecting to this charge. Since there was no evidence that appellant killed in the heat of passion, he was not prejudiced by the courts failure to charge on this element and his trial attorney's failure to object to it.

(C) Appellant's third contention is that his trial counsel was ineffective for not objecting to the assistant district attorney's statement that appellant walked two blocks to his car after the killing instead of, as appellant testified, to the wrong car. This misstatement, argues appellant, would lead the jury to believe the appellant knew exactly what he was doing because he was cognizant enough to walk to his own car. The assistant district attorney's statement is supported by the testimony of eyewitnesses who testified that after the killing appellant walked to his own car. (N.T.Vol. I p. 389a and 408a). Although appellant did not testify that he walked to a car parked two blocks away, appellant had testified that prior to the killing he parked his car several blocks away. (N.T. Vol. I (218a). The statement made by the assistant district attorney was substantiated by the evidence. A witness also testified that appellant walked to the wrong car first. However the assistant district attorney's failure to mention this in his closing did not mislead the jury. Appellant's attorney failed to object not because of ineffectiveness but because he had no basis for an objection.

(D) Appellant's fourth contention is that trial counsel was ineffective in failing to object to assistant district attorney's closing argument when he said "the victim is not here to speak for herself. She can't be cross-examined." (N.T.Vol. II 808a). Appellant alleges that the statement

was inflammatory and only obscured the appellant's defense.

When the statement is read in its proper context, it is clear that the assistant district attorney was pointing out that decedent was not present to challenge the defense's assertion that she spoke falsely at a recent custody hearing. The assistant district attorney urged the jury not to believe the accusation against the decedent at the custody hearing. In doing so he was asking the jury to consider whether appellant's failure to get custody had such a devastating impact on him that he could not form a specific intent to kill. If the defense counsel had objected, he would have just called further attention to the death of the victim. Since there was no basis for the objection, this claim is also frivolous.

(E) Appellant's fifth contention is that his trial attorney failed to object to the assistant district attorney's assertion that another man was living with the victim and intended to marry her and thus provided the basis for the jury to find a motive for the killing. Since appellant testified to the assertion, (N.T.Vol. II 538a) it was proper for the assistant district attorney to refer to it and the defense counsel did not err in not objecting to it.

(F) Appellant's sixth contention is that trial counsel was ineffective for failing to call two witnesses who would have testified that appellant bought the handgun he used to kill his wife. Since appellant himself testified to this and the witnesses, if called, would have testified on the basis of what appellant told him, the testimony would have been hearsay and cumulative. Therefore, there was no reason to call these witnesses.

(G) Appellant's seventh contention is that his trial counsel was ineffective for retaining Dr. Heller as an expert since he was ill-prepared to testify. Upon review of the expert's testimony, Dr. Heller appears to have been well-prepared, knowledgable about the appellant and thorough in his psychiatric examination of appellant. His testimony

was not valueless, as the defendant asserts, and Dr. Heller was far from unprepared to testify.

Appellant's eighth contention is that his trial counsel was ineffective for not objecting to the testimony of Dr. Kenneth Kool, a Commonwealth witness. Dr. Kool testified that he based his opinion upon the reports of Drs. Bartle, Heller, Cooke and Urban, his interview of the appellant's daughter and her boyfriend, who saw the appellant shortly before the incident, the transcript of the custody hearing of the appellant's son, the police report of the incident and his observation of the appellant during the trial. (N.T.Vol. II 734a). A witness may base his opinion upon his personal observations. *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902 (1976). A medical expert may base his opinion upon facts which are in the record and reports of others which are not in medicine but are customarily relied upon in the practice of medicine, including observations by lay persons. *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971); *Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978). Since Dr. Kool's testimony was based upon his personal observation of the reports customarily relied upon which included observations by lay persons, reports of medical doctors who testified at trial, and other reports which are part of the record, there was no basis upon which defense counsel could object and he properly did not do so.

(I) Appellant's ninth contention is that trial counsel was ineffective for failing to object to the court's charge on diminished capacity. Since the trial court's charge on diminished capacity was legally correct, there was nothing to which trial counsel could have objected.

(J) Appellant's tenth contention is that trial counsel failed to object to the admission into evidence of the report of Dr. Edward Urban. Since the report, C–30, was never admitted into evidence, there was nothing to which the trial counsel could have objected.

152

(K) Appellant's eleventh contention is that his trial counsel was ineffective for failing to request that the court charge that any inference of malice or intent which may be drawn from the use of a deadly weapon upon a vital part of the body was only a permissible inference and could be rejected or accepted by the jury. The court so charged, although not in the exact phraseology used by the appellant so this contention is baseless.

(L) Appellant's twelfth allegation is that his trial counsel was ineffective for bringing to the jury's attention the fact that the Lower Merion police denied his application to possess a firearm and his trial counsel should have requested a point for charge that this fact had no meaning. Appellant ignores the fact that he was charged with possession of a firearm without a license and the Commonwealth properly introduced into evidence appellant's possession of a firearm without a license. (N.T. 489a). A request for a point for charge that the Lower Merion police denied his application would have been frivolous.

(M) Appellant's thirteenth contention is that trial counsel was ineffective for failing to call Dr. Robert Sadoff (sic) as a witness because he would have added greater weight to appellant's defense. Since appellant does not allege that Dr. Sadoff (sic) would have testified differently from the other defense witnesses, the evidence would have been cumulative. Therefore, this assertion is meritless.

(N) Appellant's fourteenth contention is that trial counsel was ineffective for not alleging in the post verdict motions that the verdict was against the weight of the evidence when the evidence showed the appellant did not have the required frame of mind to form the specific intent necessary for first degree murder. The Commonwealth offered substantial evidence that appellant had the requisite specific intent while appellant offered extensive evidence to the contrary. Since the trial court looks at the evidence in the light most favorable to the verdict winner when ruling on post verdict motions, *Commonwealth v. Davis*, 491 Pa.

363, 421 A.2d 179 (1980) and there was an abundance of evidence to support the verdict, a motion on this basis would have been frivolous and trial counsel was not ineffective for failing to raise it.

(O) Appellant's fifteenth contention is that trial counsel should have objected to the introduction of any evidence of the custody action in Montgomery County because at the custody hearing appellant did not have the opportunity to rebut the decedent's testimony. It was appellant who introduced the custody action into the trial. He testified about it at length and used it to support his defense that he was so mentally distraught about the statements decedent made at the custody action and the subsequent award of custody to his wife that he was unable to form the specific intent. (N.T.Vol. II 367a–370a, 700a–704a, Vol. I 211a, 265a–266a, 281a). This contention is meritless.

(P) Appellant's sixteenth contention is that counsel was ineffective for failing to object to testimony of a Commonwealth witness that appellant remained silent when arrested. Appellant claims he is constitutionally entitled to remain silent and the jury drew the inference from appellant's silence that he was guilty.

There is no basis for this contention, and the allegation of the jury's inference is pure unsubstantiated speculation. Appellant's defense was that he was intoxicated and mentally distraught at the time he killed his wife. Remaining silent would have been consistent with this defense, and thus there was no reason for counsel to object to it. Appellant has failed to assert any prejudice arising from the failure of his counsel to object.

(Q) Appellant's seventeenth contention is that trial counsel was ineffective for not challenging the arresting officer's testimony regarding a statement appellant made at his arrest that appellant would not hurt anybody else. Appellant alleges that at the time he made a statement the radio in his car was on loudly and thus, the police officer could

not have heard the statement. The officer testified that he heard the statement as he removed appellant from the car (N.T. 427a) and his hearing was not impaired by the car radio. There was no basis on which trial counsel could object.

(R) Appellant's eighteenth contention is that counsel was ineffective in failing to object to the assistant district attorney's reference that the victim was lying in a "pool of blood." Appellant claims the statement only inflamed the jury, was prejudicial, and was not founded on evidence adduced at trial. The record established that Mrs. Hathaway bled profusely from the head wounds. (N.T.Vol. I see e.g. 350a, 414a, 469a–471a). It is axiomatic that the prosecutor may refer to the facts of record and all logical inferences drawn therefrom, *Commonwealth v. Bullock*, 284 Pa.Super. 601, 426 A.2d 657 (1981). Therefore, his statement was a logical inference. Trial counsel had no reason to object.

Appellant's post-verdict motions were meritless, as well as his allegations of ineffectiveness of counsel. We affirm the trial court.

Judgment of sentence affirmed.

SPAETH, President Judge, concurs in the result.