531 A.2d 806

COMMONWEALTH of Pennsylvania,

v.

**Barry WHITE, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 23, 1987.

Filed Sept. 28, 1987.

Application for Reargument En Banc
Denied Sept. 28, 1987.

540

Paul D. Boas, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com., appellee.

Before POPOVICH, CERCONE and HESTER, JJ.

CERCONE, Judge:

Appellant, Barry White, was convicted by a jury of third degree murder and sentenced to five (5) to ten (10) years imprisonment. Appellant's conviction arose out of his discharging a shotgun out of a car window in the early morning in downtown Pittsburgh, resulting in the death of the victim who was standing in an alley.

Appellant contends that the trial court committed reversible error in allowing the Commonwealth to ask two voir dire questions which he alleges improperly informed the prospective jurors of the penalty for first degree murder. Appellant further contends that the trial court committed reversible error in allowing two veniremen to be struck for cause on the basis of their answers to those voir dire questions. Appellant also asserts four claims of ineffectiveness of counsel. We find no error justifying reversal of the judgment of sentence and we find that trial counsel was not ineffective. Judgment of sentence is affirmed.

We note at the outset that the scope of voir dire rests in the sound discretion of the trial judge and his decision will not be reversed unless palpable error is established. *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977); *Commonwealth v. Hathaway*, 347 Pa.Super. 134, 500 A.2d 443 (1985).

Voir dire questions # 9 and # 10 read as follows:

9. The mandatory sentence for First-degree Murder is life imprisonment. Do you have any moral or conscientious scruples which would automatically prevent you from returning with a finding which would result in life imprisonment regardless of the law or the evidence?

10. Do you have any moral or conscientious scruples against imposing a verdict of First-degree Murder when the defendant was nineteen years old at the time of the crime?

Appellant's first argument is that these questions improperly informed the veniremen of the penalty for first degree murder, in contravention of the established principle that the function of the jury is to determine guilt or innocence

and not to consider the question of penalty. Appellant argues that the mere asking of those questions was highly prejudicial as it caused the jurors to become preoccupied with first degree murder and its penalties.

The numerous cases cited by appellant hold that jurors ought not be instructed by the court or advised by counsel in their closing arguments of the probable result of the verdict. *See Commonwealth v. Lucier*, 424 Pa. 47, 225 A.2d 890 (1967) (trial court erred in instructing the jury as to the penalties for voluntary manslaughter, second degree murder and first degree murder); *Commonwealth v. Mills*, 350 Pa. 478, 39 A.2d 572 (1944) (instructions to a jury concerning defendant's eligibility for parole or pardon constituted reversible error); *Commonwealth v. White*, 350 Pa.Super. 457, 504 A.2d 930 (1986) (trial court was correct in refusing to instruct the jury that a mandatory sentence would be imposed if appellant were found guilty); *Commonwealth v. Waters*, 334 Pa.Super. 513, 483 A.2d 855 (1984) (trial court was correct in prohibiting defense counsel from discussing the penalties of the offense in his closing arguments).

These cases, however, are not persuasive in the context of questioning potential jurors. Jury instructions and closing arguments are intended to directly affect and influence the jury in their determination of guilt or innocence, whereas voir dire examinations have a completely different function and purpose. Voir dire questions are permitted to provide the accused with a competent, impartial and unprejudiced jury. *Commonwealth v. Hathaway*, 347 Pa.Super. 134, 500 A.2d 443 (1985). Voir dire questions are asked to determine whether a prospective juror "is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence" [1] *Common-*

1. Although these kinds of questions generally operate to benefit the state's case, the principles involved also serve to protect the rights of defendants by enabling defense attorneys to identify veniremen who are predisposed to the imposition of harsh penalties regardless of the evidence peculiar to the case and of the law pertaining to that case. *See, e.g., Johnson v. State*, 713 S.W.2d 741 (Tex.App.1986) in which a

*wealth v. Colson,* 507 Pa. 440, 454, 490 A.2d 811, 818 (1985). The voir dire questions in issue in this case were asked in furtherance of these proper purposes.

There is no inherent prejudice to a defendant when the state mentions a possible penalty during voir dire examination in an attempt to ensure that each prospective juror is able to render a verdict according to the evidence regardless of the penalty which may be imposed. This cannot be disputed in light of the many cases handed down by the United States Supreme Court and the courts of this Commonwealth which allow counsel to identify through voir dire questioning those who are morally opposed to capital punishment and furthermore, to remove for cause prospective jurors whose opposition to the death penalty is so strong as to prevent or substantially impair the performance of their duties as jurors. This process is referred to as "death-qualifying" the jury. *See Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), *reh. denied,* 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186 (1968); *Commonwealth v. Peterkin,* 511 Pa. 229, 513 A.2d 373 (1986); *Commonwealth v. Datesman,* 343 Pa.Super. 176, 494 A.2d 413 (1985).

■ Appellant contends that only in death penalty cases may prospective jurors be made aware of possible sentences because only in capital punishment cases do jurors impose punishment.[2] We reject this contention. The right to a

prospective juror originally stated on voir dire that she could not assess the minimum punishment of five years for murder regardless of the evidence. The court held that it would not have been proper to exclude her, only because she was rehabilitated by further questioning when she unequivocally stated that she would consider the minimum sentence in a murder case if she felt that it was the right thing to do. *See also, Ross v. State,* 717 P.2d 117 (Okl.Cr.1986) which held that a juror who stated that he would automatically impose the death penalty upon conviction and was unwilling to follow the law by considering life imprisonment, should have been excused.

2. 42 Pa.C.S.A. § 9711 provides that after a verdict of murder of the first degree is recorded, the court shall conduct a separate sentencing

jury which has the ability to render a verdict according to the evidence, despite the penalty which may be imposed, extends to each party in every first degree murder case, whether or not capital punishment is sought.

Voir dire questions like the ones asked in this case have not been, nor should they be limited to death penalty cases but should extend to all cases in which the Commonwealth seeks a conviction for first degree murder. There are at least three Pennsylvania Supreme Court cases in which prospective jurors were informed on voir dire examination that murder of the first degree carried a mandatory life sentence and asked whether they had any conscientious objections to bringing back a verdict which would require imposition of a life sentence. *See Commonwealth v. Johnson*, 484 Pa. 545, 400 A.2d 583 (1979); *Commonwealth v. Kingsley*, 480 Pa. 560, 391 A.2d 1027 (1978); *Commonwealth v. Weeden*, 457 Pa. 436, 322 A.2d 343 (1974). *Commonwealth v. Kingsley* specifically involved a challenge to the propriety of the voir dire question, albeit the challenge was made on different grounds from those put forth in the instant case. In *Kingsley*, appellant argued that he was unduly prejudiced by the question since the Commonwealth had no evidence of murder of the first degree. However, the Court disagreed, finding that at the time of voir dire the Commonwealth believed that its evidence could support a finding of murder of the first degree. Therefore, the Court held that there was no reversible error in allowing the question concerning the imposition of a life sentence. We interpret this holding to mean that as long as there is sufficient evidence for the Commonwealth to seek a conviction of first degree murder, voir dire questioning for the purpose of determining whether a prospective juror is free of any scruples which would impair the performance of his duties as an impartial juror, is proper.[3]

hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.

3. Appellant argues that *Commonwealth v. Kingsley*, 480 Pa. 560, 391 A.2d 1027 (1978) and *Commonwealth v. Weeden*, 457 Pa. 436, 322 A.2d 343 (1974) are inapplicable because during the time those cases were

We expressly limit our holding to first degree murder cases. The law clearly allows prospective jurors to be informed of one of the possible penalties for murder in the first degree, *i.e.* capital punishment. We find no prejudice or harm in allowing them to be informed of the other penalty for the same crime, *i.e.* life imprisonment. This is especially true in light of the fact that life imprisonment is a mandatory sentence, one which a jury is unable to affect.[4]

Finally, the trial judge clearly and accurately instructed the jury that the verdict should be based on the evidence and not on what penalty might be imposed in the event of a conviction. The trial judge instructed:

> Now, in arriving at your verdict, you should not concern yourselves with any possible future consequences of your verdict including what the penalty might be if you

at trial, Pennsylvania law required that the court inform the jury prior to their deliberations as to the penalties for the various degrees of murder. 18 Pa.C.S.A. § 1311. Therefore, an objection to the "life-qualifying" question on the grounds that it improperly informed the jurors of penalties would have been meaningless at that time.

In 1978, the statute was amended, deleting the requirement that jurors be informed of the possible penalties. The statute is now silent on this point, and neither prohibits nor requires a discussion of penalties. 42 Pa.C.S.A. § 9711.

Although *Kingsley* and *Weeden* were decided when the prior law was in effect, the same "life-qualifying" question was asked in *Commonwealth v. Johnson*, 484 Pa. 545, 400 A.2d 583 (1979) which was decided under current law. A review of this statutory history indicates that at one time the legislature mandated that penalties be disclosed to the jury. We find this history to belie appellant's assertion that it is inherently prejudicial for the jury to be given such information.

4. As has been made apparent, we disagree with appellant's characterization as a "steadfast rule" the principle that the jury has no concern with the consequences of a verdict. By way of further example, when insanity is raised as a possible defense to criminal charges, a jury must be instructed concerning the consequence of a verdict of not guilty by reason of insanity. In so holding, the Court in *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977) reasoned that explaining the consequences of acquittal by reason of insanity to a jury will assist the jury in properly determining the guilt or innocence of a defendant. In *Commonwealth v. Geschwendt*, 500 Pa. 120, 125, 454 A.2d 991, 994 (1982) the Supreme Court described *Mulgrew* as a rejection of the "simplistic view ... that punishment [is] not the concern of the jury."

should decide the defendant guilty. It is only up to you to decide whether the Commonwealth has proven the defendant guilty beyond a reasonable doubt. Whenever a defendant has been found guilty, it then becomes the judge's duty to fix the penalty unless you should find the defendant guilty of murder in the first degree. You have nothing to do with this, and you should not permit the possibility of punishment to influence you in any way.

We find that this instruction served to clarify any doubts in the minds of the jurors as to their proper roles.

For all of the foregoing reasons, we hold that voir dire questions which enable trial attorneys to discern which prospective jurors have moral views which would prevent or substantially impair the performance of their duties as impartial jurors, are proper in first degree murder cases which do not involve the death penalty as well as those in which capital punishment is sought.

Appellant's second argument is that the trial court erred in allowing two veniremen to be struck for cause on the basis of their answers to the voir dire questions at issue in this case. While these veniremen expressed some moral or conscientious scruples against imposing a verdict of first-degree murder on a nineteen-year-old defendant, they did not express any scruples which would automatically prevent them from returning a verdict which would result in life imprisonment, in accordance with the law or the evidence. Appellant asserts that exclusion for cause on the grounds of the mere expression of conscientious scruples has been prohibited by the United States Supreme Court in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) *reh. denied,* 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186 (1968).[5]

5. *Witherspoon,* reversed a death sentence imposed by a jury whose selection was performed by disqualifying for cause all who expressed conscientious or religious scruples against capital punishment. The Supreme Court stated that a jury so selected was not neutral but one "uncommonly willing to condemn a man to die." *Id.* 391 U.S. at 520–21, 88 S.Ct. at 1776.

■ This issue has not been properly preserved for appellate review. A litigant must do two things in order to preserve an issue. First, he must make a timely, specific objection at trial. *Commonwealth v. Williams*, 458 Pa. 319, 326 A.2d 300 (1974). Second, he must raise the issue in post-trial motions. *Commonwealth v. Keysock*, 236 Pa.Super. 474, 345 A.2d 767 (1975). Appellant took neither of these steps.

■ Before voir dire questioning began, appellant's trial counsel challenged the propriety of the two voir dire questions only on the grounds that they improperly placed the question of penalty before the jury. He never raised the issue of when a juror may be excused for cause based on his answer to the voir dire question. When the Commonwealth first requested that a juror be struck for cause because of her answer to question # 10, appellant's attorney renewed his previous objection on the same grounds. When the Commonwealth sought to exclude for cause a second juror based on her answer to question # 10, appellant's attorney made no objection. We have consistently held that no allegation of error will be considered by this court unless it was properly raised by specific objection at the time of trial. *Commonwealth v. Williams*, 458 Pa. 319, 326 A.2d 300 (1974).

Furthermore, appellant's Motion to Arrest Judgment and for a New Trial did not raise the *Witherspoon* issue. The fact that such issue was touched upon in appellant's brief in

The Supreme Court established, however, that a trial court could strike for cause those veniremen:
> ... who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.

*Id.* at 522 n. 21, 88 S.Ct. at 1777 n. 21. The Supreme Court has subsequently dispensed with the reference to "automatic" decision-making; the relevant inquiry now is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with instructions and his oath. *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

support of post-trial motions, does not cure the failure to include the issue in written post-verdict motions. *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

We recognize that the first two issues appellant raises are related, however we cannot review a case upon a theory different from that upon which it was presented to the court below. *Commonwealth v. Isabell*, 503 Pa. 2, 467 A.2d 1287 (1983); *Commonwealth v. Hernandez*, 339 Pa. Super. 32, 45 n. 7, 488 A.2d 293, 300 n. 7 (1985). Accordingly, the second issue is waived.[6]

Appellant also raises four claims of ineffectiveness of counsel which we will address seriatim. When confronted with a claim of ineffectiveness of counsel, we must first determine whether the issue underlying the charge of ineffectiveness is of arguable merit. If the underlying issue is found to be of arguable merit, our inquiry shifts to a determination of whether the course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980). Furthermore, an appellant must show that any deficient performance by counsel caused prejudice to and affected the outcome of the trial. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986).

Appellant alleges that trial counsel was ineffective in failing to introduce evidence showing that appellant has deficient vision and that he was not wearing any corrective device on the morning of the shooting. Appellant asserts that such evidence would have gone towards proving that he was unable to see the victim in the alley; he mistakenly states in his brief, "[e]ssential to that verdict [third degree murder] was the conclusion that Mr. White [appellant] knew that the victim was in the alley." The flaw in this argument is that when one considers the correct definition of third degree murder, it becomes apparent that appellant

6. Appellate counsel did not represent appellant at trial; it is not asserted on appeal that trial counsel was ineffective in failing to preserve this issue.

could have been found guilty of third degree murder whether or not he saw his victim.

■■■ Malice is the gravamen of third degree murder and it is the distinguishing factor between murder and manslaughter. *Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1980).

> ... Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty ...

> "To summarize: If there was an unlawful killing with (legal) malice, express, or implied, that will constitute murder even though there was no intent to injure or kill the particular person who was killed and even though his death was unintentional or accidental...." *Commonwealth v. Commander*, 436 Pa. 532, 537, 260 A.2d 773, 776 (1970), quoting *Commonwealth v. Gooslin*, 410 Pa. 285, 189 A.2d 157 (1963) (emphasis added, citations omitted).

> Thus, malice may be found to exist not only in an intentional killing, but also in an unintentional homicide where the perpetrator "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Hare*, 486 Pa. 123, 129, 404 A.2d 388, 391 (1979).

*Id.*, 494 Pa. at 227–28, 431 A.2d at 232. Accordingly, appellant is unable to show that the decision not to introduce evidence regarding appellant's vision caused prejudice to him or affected the outcome of the trial.

■■■ Next, appellant alleges that trial counsel was ineffective in failing to renew his objection to the court's refusal to charge the jury on intoxication, after the charge was given. We do not find, though, that counsel's failure to object was prejudicial since appellant was convicted of third-degree murder. Intoxication is a defense only to crimes which require specific intent to commit an act. *See Commonwealth v. Gibson*, 264 Pa.Super. 548, 400 A.2d 221

(1979). By contrast, the requisite mental state for murder in the third degree is malice rather than specific intent. *See Commonwealth v. Frederick*, 327 Pa.Super. 199, 475 A.2d 754 (1984).

▪ Appellant also argues that trial counsel was ineffective for failing to introduce expert testimony regarding the synergistic intoxicating effect of the asthma medicine taken by appellant the morning of the shooting. Such evidence would have been relevant to the first degree murder charge in order to negate the element of intent. However, since the jury returned a verdict of third degree murder which is not a crime of specific intent, and to which a defense of diminished capacity is inapplicable, appellant is unable to show any prejudice.

▪ Appellant's final claim of ineffectiveness is that trial counsel failed to adequately attack the credibility of Officer Devault. The officer testified that he observed appellant's car slow down and make a deliberate movement to the right at which time the officer heard a loud report (the discharge of the weapon). Appellant claims that the "obvious" inference to be drawn from this testimony is that the shooting of the victim was intentional.

At trial, the defense attorney rebutted Officer Duvault's testimony by introducing evidence to show that the Officer's vehicle was not present on William Penn Way when the shot was fired and therefore, the officer could not have seen appellant's vehicle slow down and pull to the right. Such rebuttal evidence was accomplished in two ways. First, trial counsel cross-examined Officer DeVault and a detective about a report prepared by the detective the morning of the murder wherein it stated that Officer Devault had reported that he lost sight of the vehicle until after he heard the shot. Second, trial counsel elicited the testimony of a security guard who stated that he was in an elevated guard box when he heard the shot, and only afterwards did he see a police car turn the corner and pass in front of the crime scene.

Appellant now argues that although trial counsel did rebut Officer Devault's testimony, he did not use all available means to do so. Perhaps optimal representation by trial counsel would have used any and all possible methods of challenging the officer's credibility. However, optimal representation is not required either by the constitution or common sense. What is required is effective representation. *Commonwealth v. Garrity*, 509 Pa. 46, 500 A.2d 1106 (1985). Under that standard, appellant was not denied his Sixth Amendment right to effective counsel, nor was he predjudiced by counsel's assistance.

Judgment of sentence is affirmed.