408 Pa. Superior Ct. 472 (1991)
597 A.2d 130
COMMONWEALTH of Pennsylvania
v.
Frank OSELLANIE, Appellant.
Superior Court of Pennsylvania.
Argued May 7, 1991.
Filed September 25, 1991.
*474 Harold M. Kane, David S. Nenner, Philadelphia, for appellant.
Michael J. Barrasse, Dist. Atty., Scranton, for Com.
Before ROWLEY, President Judge, and CIRILLO and JOHNSON, JJ.
JOHNSON, Judge:
Frank Osellanie appeals from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County following his conviction for second-degree murder, third-degree murder, voluntary and involuntary manslaughter, kidnapping, rape and involuntary deviate sexual intercourse. See 18 Pa.C.S. §§ 2502(b), 2502(c), 2503, 2504, 2901, *475 3121, 3123. Osellanie's convictions stem from the abduction, torture, rape and murder of a nine year old girl on May 14, 1989.
Following Osellanie's jury trial, post-verdict motions were filed and denied by the Honorable Carlon M. O'Malley. Judge O'Malley sentenced Osellanie to a term of life imprisonment for the second-degree murder conviction and to consecutive terms of not less than twenty years' nor more than forty years' imprisonment for the kidnapping and rape convictions. Judge O'Malley found that the offenses of third-degree murder, involuntary and voluntary manslaughter, and involuntary deviate sexual intercourse merged with the second-degree murder conviction for sentencing purposes.
This timely appeal was then filed. On February 1, 1991, subsequent to Osellanie's filing the appeal presently before us, Judge O'Malley granted Osellanie's petition to proceed in forma pauperis. We note, however, that Osellanie continues to be represented by private counsel.
Osellanie raises three issues for our review:
1) Did the closing argument of the prosecutor contain several prejudicial and improper remarks referring to the facts not in evidence and inflammatory in nature thereby denying the Defendant, Frank Osellanie, a fair trial?
2) Did the Honorable Court err in allowing the Jury to view several photographs depicting decedent's charred body?
3) Did the Honorable Court err in not changing venue or in the alternative not granting a change of venire?
Osellanie has failed to supply us with a complete record for our review. Pa.R.A.P. 1921. Specifically, he has failed to provide us with a transcript of his trial proceedings. Pa.R.A.P. 1911. Although Osellanie is before this court in forma pauperis it is nonetheless the appellant's responsibility to order the transcript required and ascertain its presence in the record prior to certification for appeal. Pa.R.A.P. 1911, 1921, 1922. Commonwealth v. Lowry, 385 *476 Pa.Super. 236, 560 A.2d 781 (1989); Dorn v. Stanhope Steel, Inc., 368 Pa.Super. 557, 563 n. 1, 534 A.2d 798, 801 n. 1 (1987), allocatur denied, 518 Pa. 656, 544 A.2d 1342 (1988). Commonwealth v. Williams, 357 Pa.Super. 462, 516 A.2d 352 (1986). We are limited to considering only those facts which have been duly certified in the record on appeal. Button v. Button, 378 Pa.Super. 142, 145, 548 A.2d 316, 318 (1988), citing Commonwealth v. Young, 456 Pa. 102, 115, 317 A.2d 258, 264 (1974); Barner v. Barner, 364 Pa.Super. 1, 9, 527 A.2d 122, 126 (1987).
Inquiries as to the whereabouts of the trial transcript by this court have proved unavailing. Moreover, we are compelled to remind defense counsel that it is not the responsibility of this court to obtain a copy of the trial transcript for the purposes of reviewing the client's claims. See Commonwealth v. Buehl, 403 Pa.Super. 143, 588 A.2d 522 (1991). We direct counsel to Pennsylvania Rule of Appellate Procedure 1923, which provides that a statement by the appellant may be submitted to this court in the absence of a transcript. Without a trial transcript or a statement in lieu of a transcript, we are unable to conduct a proper review and analysis of Osellanie's first issue, which alleges improper remarks by the prosecutor in his closing. Therefore, we must conclude that this issue has been waived for the purpose of appellate review. Commonwealth v. Lowry, supra.
In addressing Osellanie's second claim we note that we are again thwarted in our efforts because Osellanie has failed to provide us with the photographic exhibits to which he objects. Pa.R.A.P.1921. However, as Judge O'Malley has described the photographs at issue, we shall address this claim of trial court error, relying upon his written depiction. Judge O'Malley has described the pictures of the victim's body as "partially clothed" and "charred." Trial Court Opinion at 4. Osellanie describes the photographs as "gruesome" and "mortifying" but notes only that the photographs showed the victim "unclothed and stretched out on the Coroner's table. The body was severely *477 burned and disfigured." Appellant's brief at 35. Admission of photographs depicting the corpse of a homicide victim or the scene of the crime lies within the sound discretion of the trial court whose decision will not be disturbed absent an abuse of discretion. Commonwealth v. Edwards, 521 Pa. 134, 151, 555 A.2d 818, 827 (1989). If the trial court finds that the photograph is not inflammatory it may be admitted if it is relevant to the facts of the case. Id. Even a gruesome or inflammatory photograph is admissible if its probative value outweighs its prejudicial effect on the jury. Id.
In Edwards, the trial court admitted thirteen photographs of the victim's body. The photographs depicted the beaten face of the victim, the strangulation area of the victim's neck, wounds on the victim's hands and fingers, bite marks on the victim's legs, and explicit photographs of the victim's chest and abdomen related to the sexual nature of the attack. Id. On appeal, our supreme court concluded that "[t]he photographs admitted were not inflammatory and were relevant in aiding the jury to understand the events of the crime charged." Id.
The description of the photographs by both the trial court and by Osellanie certainly do not rise to to the level of explicitness which the supreme court found acceptable in Edwards. Furthermore, Judge O'Malley permitted the photographs into evidence to substantiate the coroner's testimony as to the cause of the victim's death either by trauma to her head or by burning and inhalation. As such, admission of the photographs in question was not an abuse of the trial court's discretion. Edwards, supra.
Osellanie next contends that the trial court erred in denying his request for a change of venue or venire due to the pre-trial publicity surrounding the victim's disappearance and death. It is axiomatic that the grant or denial of a change of venue rests within the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. Commonwealth v. Tedford, 523 Pa. *478 305, 323, 567 A.2d 610, 618 (1989). In Tedford, we acknowledged that there are instances when pre-trial publicity is so great that prejudice of a jury is presumed.
Pre-trial prejudice is presumed if: (1) the publicity is sensational, inflammatory, and slanted towards conviction rather than factual and objective; (2) the publicity reveals the accused's prior criminal record, if any, or if it refers to confessions, admissions, or reenactments of the crime by the accused; and (3) the publicity is derived from police and prosecuting officer reports.
Id., 523 Pa. at 324, 567 A.2d at 619 (citations omitted). However, the accused's right to a fair trial is preserved if the trial judge is "particularly protective of the appellant's right to a fair trial before an impartial jury throughout the jury selection process." Id., 523 Pa. at 326-27, 567 A.2d at 620. Judge O'Malley notes that in the present case several prospective jurors who had knowledge of crimes attributed to Osellanie were excused for cause and were immediately separated from the jury pool. Furthermore, the impaneled jury was sequestered throughout the trial and jury deliberations. Judge O'Malley also notes that the defense did not even exhaust all their allotted peremptory challenges during the voir dire. Although Osellanie has not provided us with a transcript of the voir dire, see Pa.R.A.P.1911, 1921, supra and Buehl, supra, he has provided us with copious copies of newspaper articles to support his claim of pervasive prejudicial pre-trial publicity. However, without a transcript of the voir dire we cannot presume that the jury was tainted by this publicity. Buehl, supra; Dorn, supra. We are compelled, therefore, to conclude that the protections instituted by Judge O'Malley were sufficient to preserve Osellanie's right to a fair trial. Tedford, supra.
Brief mention must be made of the position taken by our most highly esteemed colleague, the Honorable Vincent A. Cirillo, in his accompanying Dissenting Opinion. The issue of inconsistent verdicts which Judge Cirillo discusses has not been raised by either party on this appeal. Osellanie has been represented by privately-retained counsel *479 throughout these proceedings. The Motion for New Trial and an [sic] Arrest of Judgment filed June 25, 1990 makes no mention of the alleged inconsistent verdicts. We believe that the failure of Osellanie to raise assignments of error in post-verdict motions results in the preclusion of later review of those issues by an appellate court. Commonwealth v. Monarch, 510 Pa. 138, 146-47, 507 A.2d 74, 78 (1986).
Were we, as an intermediate appellate court, to attempt to review the issue, we would be faced with the clear holding of the majority opinion in Commonwealth v. Brightwell, 479 Pa. 541, 388 A.2d 1063 (1978) cert. denied sub nom. Brightwell v. Pennsylvania, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 664, (1978). In that case, the Honorable Samuel J. Roberts, writing for six of the seven justices of our Supreme Court, said:
Finally, appellant asserts that the jury could not lawfully return a verdict of guilty of both murder of the third degree and voluntary manslaughter. This issue has not been preserved for appellate review. When the jury returned its verdict, and before the court accepted it, the court called counsel to sidebar and informed them that "it is my understanding that the verdict in this case would be recorded as guilty of murder in the third degree ... Do you agree on that?" Both counsel agreed. The court then announced that appellant had been found guilty of murder of the third degree. Again, appellant did not interpose an objection. Had appellant objected and the court determined the verdict was inconsistent, the court could have directed the jury to retire and reconsider its verdict. By waiting until post-verdict motions to raise the issue, appellant deprived the court of an opportunity to correct any error. Consequently, appellant may not now complain of inconsistency in the verdict.
479 Pa. at 546-47, 388 A.2d at 1066. (citations and footnote omitted).
We believe we are bound to limit our review to those three issues preserved and raised on this appeal by Osellanie. *480 Any other claims, such as that addressed by Judge Cirillo, are properly left to subsequent collateral proceedings, if any, under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546. We therefore take no position on, nor do we consider, whether the presence or absence of malice is a separate and distinct element of the crime of either murder or manslaughter. And we do not attempt to decide the outcome of any future collateral proceeding involving issues not now before us.
Judgment of sentence AFFIRMED.
CIRILLO, J., files a dissenting opinion.
CIRILLO, Judge, dissenting:
I respectfully dissent.
I believe that the judgment of sentence should be reversed and a new trial granted Osellanie, except as to the offense of first-degree murder for which Osellanie was acquitted,[1] because the jury could not lawfully return a verdict of guilty of all the criminal homicide offenses with which Osellanie was charged. Cf. Commonwealth v. Brightwell, 479 Pa. 541, 388 A.2d 1063 (1978) (Manderino, J., dissenting), cert. denied, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 664 (1978).[2] Generally, we recognize that

*481 [c]onsistency in criminal verdicts is not necessary, and logical inconsistencies will not serve as grounds for reversal. Inconsistent verdicts are proper so long as the evidence is sufficient to support the convictions the jury has returned.
Commonwealth v. Maute, 336 Pa.Super. 394, 407, 485 A.2d 1138, 1145 (1984) (emphasis added). See also Commonwealth v. Troy, 381 Pa.Super. 326, 553 A.2d 992 (1989), alloc. denied, 525 Pa. 626, 578 A.2d 413 (1990); Commonwealth v. Mathis, 317 Pa.Super. 362, 464 A.2d 362 (1983); Commonwealth v. Williams, 294 Pa.Super. 93, 439 A.2d 765 (1982); Commonwealth v. Shaffer, 279 Pa.Super. 18, 420 A.2d 722 (1980).
I begin with a discussion of Osellanie's inconsistent jury verdicts with the Crimes Code definition of the various grades of criminal homicide, each of which is a separate offense:[3]

*482 § 2502. Murder
(a) Murder of the first degree.  A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.
(b) Murder of the second degree.  A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.
(c) Murder of the third degree.  All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.
§ 2503. Voluntary manslaughter
(a) General rule.  A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
(1) the individual killed; or
(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
(b) Unreasonable belief killing justifiable.  A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but this belief is unreasonable.
(c) Grading.  Voluntary manslaughter is a felony of the second degree.
§ 2504. Involuntary manslaughter

*483 (a) General Rule.  A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.
(b) Grading.  Involuntary manslaughter is a misdemeanor of the first degree.
18 Pa.C.S. §§ 2502, 2503, 2504.
In order to determine the grade of homicide, if any, of which the defendant is guilty "it is necessary to look to his state of mind; the requisite mental state must be proved beyond a reasonable doubt ..." Commonwealth v. Bachert, 499 Pa. 398, 406, 453 A.2d 931, 935 (1982). See also 18 Pa.C.S. § 302 (a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense); 18 Pa.C.S. §§ 2501, 2502. In this Commonwealth, "murder is still governed by the Common law definition: the unlawful killing of another with malice aforethought, expressed or implied." Commonwealth v. Sanders, 299 Pa.Super. 410, 421, 445 A.2d 820, 825 (1982) (citing Commonwealth v. Bowden, 456 Pa. 278, 309 A.2d 714 (1973)). See also Commonwealth v. Austin, 394 Pa.Super. 146, 575 A.2d 141 (1990); Commonwealth v. Fisher, 342 Pa.Super. 533, 493 A.2d 719 (1985); Commonwealth v. Drum, 58 Pa. 9 (1868); 18 Pa.C.S. 2502. See also Model Penal Code § 210.2(1)(a).
Malice, as an element of murder, is defined as "that condition of mind which prompts one to take the life of another without just cause or provocation." Black's Law Dictionary 862 (5th ed. 1979). In other words, "a criminal homicide is committed with malice if it is committed with an intent to kill." Commonwealth v. Garcia, 474 Pa. 449, 378 A.2d 1199 (1977). See also Austin, 394 Pa.Super. at 153, 575 A.2d at 145 ("malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind *484 regardless of social duties"). The element of malice must be established beyond reasonable doubt to sustain a conviction of murder. Austin supra; Commonwealth v. Reilly, 519 Pa. 550, 549 A.2d 503 (1988); Commonwealth v. Oates, 448 Pa. 486, 295 A.2d 337 (1972). Furthermore, malice is the distinguishing factor between manslaughter and murder. See 18 Pa.C.S. §§ 2502, 2503, 2504; Austin, supra; Commonwealth v. Wanamaker, 298 Pa.Super. 283, 444 A.2d 1176 (1982); Commonwealth v. Young, 494 Pa. 224, 431 A.2d 230 (1981). Absence of malice, therefore, is the critical determinate in establishing voluntary or involuntary manslaughter. See 18 Pa.C.S. §§ 2503, 2504; Commonwealth v. White, 366 Pa.Super. 538, 531 A.2d 806 (1987), alloc. denied, 520 Pa. 605, 553 A.2d 967 (1988); Garcia, supra; Commonwealth v. Polimeni, 474 Pa. 430, 378 A.2d 1189 (1977). See also Model Penal Code § 210(1)(b).
In this Commonwealth, as in most jurisdictions, manslaughter, which at common law was a single offense, is divided into two separate offenses. See 18 Pa.C.S. §§ 2503, 2504, Garcia, supra; Polimeni, supra; Perkins & Boyce, supra. Contra Model Penal Code §§ 210.3, 210.4 (provides for manslaughter committed recklessly or a homicide which would otherwise be murder when it is committed under extreme mental or emotional disturbance). Voluntary manslaughter is a homicide committed under a sudden and intense passion resulting from serious provocation or from an unreasonable belief that the killing is justified. 18 Pa.C.S. § 2503. See also Commonwealth v. Voytko, 349 Pa.Super. 320, 503 A.2d 20 (1986); Garcia, supra. Involuntary manslaughter, however, is a misdemeanor homicide where death occurs as a result of criminal negligence. 18 Pa.C.S. § 2504; Commonwealth v. Stehley, 350 Pa.Super. 311, 504 A.2d 854 (1986); Polimeni, supra.
An analysis of the elements of the two manslaughter offenses leads me to conclude that guilty verdicts for both voluntary manslaughter and involuntary manslaughter are clearly inconsistent. The homicide is either committed as a result of passion or provocation or an unreasonable belief *485 that the killing is justified, or as a result of acts, "whether lawful or unlawful, done in a reckless or grossly negligent matter." Polimeni, 474 Pa. at 442, 378 A.2d at 1195. See also Garcia, supra; 18 Pa.C.S. §§ 2503-2504. It is simply a factual and legal impossibility to find that the killing was both unintentional (involuntary manslaughter) and intentional but committed when the actor was under the influence of a sudden and intense provocation or an unreasonable belief (voluntary manslaughter).
In the case at hand, the jury returned guilty verdicts for both charges of manslaughter. I am at a loss to explain why defense counsel failed to object to this inconsistency and why the trial court did not order the jury to redeliberate in order to return a clear and unequivocal verdict. See Commonwealth v. Dzvonick, 450 Pa. 98, 297 A.2d 912 (1972) (prior to recording the verdict, there are two accepted ways of verdict molding: 1) if the jury's error is defective in form only, then the judge may correct it in open court, and 2) if the error is substantive, the court must send the jury back with additional instructions for further deliberation). See also Commonwealth v. Craig, 471 Pa. 310, 370 A.2d 317 (1977); Commonwealth v. Williams, 360 Pa.Super. 23, 519 A.2d 971 (1986); Commonwealth v. Shain, 324 Pa.Super. 456, 471 A.2d 1246 (1984). Nonetheless, I am convinced that such an error warrants reversal.
The greater inconsistency in this case, however, lies in the guilty verdicts returned by the jury, and allowed to stand by the trial judge, for both manslaughter offenses and the two murder offenses. As I previously noted, absence of malice is the critical determinate in establishing voluntary or involuntary manslaughter, as opposed to murder. White, supra; Garcia, supra; Polimeni, supra. Logically, therefore, if the evidence presented is only sufficient to support a killing without malice, it follows that the evidence cannot be sufficient to support the same killing with malice. "The finding of an absence of malice contained in the voluntary manslaughter verdict works as an acquittal of *486 the murder charge." Brightwell, 479 Pa. at 550, 388 A.2d at 1068 (Manderino, J., dissenting).
Instantly, I cannot ignore the obvious and inherently illogical inconsistences in Osellanie's multiple guilty verdicts for different degrees of homicide arising out of the same incident. Brightwell, supra (Manderino, J., dissenting). I am compelled to conclude that the jury's finding of an absence of malice in the homicide creates a fatal ambiguity in the resulting verdicts. Cf. United States v. Barrett, 870 F.2d 953, 954 (3d Cir.1989) (where jury returned a general guilty verdict and appellate court was unable to determine whether jurors had voted to convict on greater or lesser offense charged, verdict was fatally ambiguous and case remanded for a new trial). I would, therefore, vacate Osellanie's judgment of sentence and remand the case for a new trial on the homicide charges.
NOTES
[1] The constitutional bar against double jeopardy precludes retrial of a criminal charge for which the defendant has been acquitted. See Commonwealth v. Zimmerman, 498 Pa. 112, 445 A.2d 92 (1981). See also Commonwealth v. Hickson, 402 Pa.Super. 53, 586 A.2d 393 (1990).
[2] After much research, I conclude that the issue of inconsistent homicide verdicts, where a jury has returned a verdict of guilty of more than one grade of homicide, has never been addressed on the merits in this jurisdiction. In each instance where this issue was raised on appeal, it has been found to have been waived because the issue was not presented to the trial court. See Commonwealth v. Shain, 324 Pa.Super. 456, 471 A.2d 1246 (1984); Commonwealth v. Brightwell, 479 Pa. 541, 388 A.2d 1063 (1978). Our sister states of New Jersey, New York and Delaware have failed to provide us with any guidance, as have the federal courts. I raise the issue in this case sua sponte because I conclude that counsel cannot waive his client's right to be acquitted of some or all of the charges by failing to timely object to the inconsistent verdicts. Brightwell, 479 Pa. at 550, 388 A.2d at 1068 (Manderino, J., dissenting). Nor do I think justice is served when the trial court erroneously allows inconsistent verdicts to be recorded instead of directing the jury to re-deliberate in order to arrive at consistent verdicts. See Shain, supra; Brightwell, supra; Commonwealth v. Johnson, 369 Pa. 120, 85 A.2d 171 (1952); Commonwealth v. Micuso, 273 Pa. 474, 117 A. 211 (1922).
[3] Historically, manslaughter has been commonly recognized as a lesser included offense of murder. See Commonwealth v. Garcia, 474 Pa. 449, 378 A.2d 1199 (1977) (involuntary manslaughter is a lesser included offense of murder); Commonwealth v. Polimeni, 474 Pa. 430, 378 A.2d 1189 (1977) (voluntary manslaughter is a lesser included offense of murder). Manslaughter is a lesser included offense of murder because the two crimes are, in the broadest sense, "different degrees of felonious homicide." R. Perkins & R. Boyce, Criminal Law 124-125 (3d ed. 1982). See also 18 Pa.C.S. § 2501. In terms of charging a defendant with murder, therefore, a defendant is entitled to have the jury receive instructions on and return a verdict of guilty of the lesser included offense of manslaughter. Commonwealth v. Schaller, 493 Pa. 426, 426 A.2d 1090 (1980); Commonwealth v. Gartner, 475 Pa. 512, 381 A.2d 114 (1977); Garcia, supra; Polimeni, supra. The purpose of the lesser included offense rule was to

prevent the prosecution from failing where some element of the crime of murder was not made. Second, it was designed to redound to the benefit of the defendant, since its effect is actually to empower the jury to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence.
Commonwealth v. Jones, 457 Pa. 563, 569, 319 A.2d 142, 146 (1974) (Opinion in Support of Affirmance), cert. denied, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974).
For purposes of conviction, however, manslaughter is not a degree of the crime of murder, but is a distinct offense. Perkins & Boyce, supra; 18 Pa.C.S. §§ 2503, 2504. After a jury is charged, a defendant can only be found guilty of either murder or manslaughter but not of both offenses as the element of malice, required for a conviction of murder, is not an element of the lesser crime of manslaughter. Garcia, supra; Polimeni, supra; Commonwealth v. Brightwell, 479 Pa. at 550, 388 A.2d at 1068 (Manderino, J., dissenting).