493 A.2d 719

**COMMONWEALTH of Pennsylvania**

v.

**Gary Thomas FISHER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 4, 1985.

Filed May 17, 1985.

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Melinda G. Tell, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before OLZEWSKI, HESTER and SHIOMOS, JJ.*

PER CURIAM:

This is an appeal from a judgment of sentence entered June 22, 1983 in Allegheny County. Appellant, Gary Thomas Fisher, was convicted of voluntary manslaughter and sentenced to imprisonment for not less than five nor more than ten years. Sentence followed a jury trial and the denial of post-trial motions.

On Saturday, May 15, 1982, several young adults and adolescents held a beer party in the Allentown district of the city of Pittsburgh. The primary party-goers were 18-year-old Dale Jays, 13-year-old Jennifer Metrovich, 13-year-old John Leasa and 18-year-old Allan Kelly, the victim. Others attended.

Metrovich was appellant's girlfriend, and appellant was a friend of Jays, Leasa and the victim. The party, which was held on a wooded hillside near Starch and Excelsior Streets, began at 6:00 P.M. At 4:00 A.M., when only Metrovich and the victim remained, appellant arrived. He was not present earlier as he attended a bachelor's party.[1]

Apparently upset by the exchange of affection between Metrovich and Kelly, appellant berated Metrovich for "messing" with his friends and called her a "little whore." At that moment, Kelly tackled appellant and a fight began.

---

* Judge Thomas N. Shiomos, Senior Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

1. Appellant was 17 years old at the time of the incident and trial. His case was transferred from juvenile court to the criminal division in order to accommodate his request for a jury trial.

During most of the struggle, Kelly was on top of appellant, striking appellant's face and chest with his fists.[2] Appellant pleaded with Kelly to stop. Appellant freed himself momentarily, but Kelly tackled him again and resumed striking him.

Appellant removed an eight-inch buck knife from a sheath attached to his belt and stabbed Kelly twice in the chest; one wound penetrated Kelly's heart. Appellant then broke away and ran to his home. He returned with his sister and joined Dale Jays in carrying Kelly from the wooded area to Excelsior Street.

When they placed Kelly on the pavement, appellant yelled, "Let me finish him off." Jays thwarted appellant's attempt to reach Kelly, and appellant warned Jays that, "I will stab your ass too." Appellant also threatened to "finish off" the entire neighborhood. He was eventually restrained by his mother and sister.

Shortly thereafter, the police and paramedics arrived. Kelly was taken to Mercy Hospital where he died that morning from cardiac arrest. Appellant was arrested and charged with criminal homicide.

It is appellant's first contention that the lower court improperly charged the jury on the crime of voluntary manslaughter. Appellant objects to the charge on several grounds. First, he complains that the court ignored statutory language by reading from the Pennsylvania Suggested Jury Instructions. By doing so, the court failed to instruct the jury on the Commonwealth's alleged burden to prove passion and provocation as elements of voluntary manslaughter.

We note that the lower court did indeed read the statutory language for the jury. It read the statutory definitions of criminal homicide, 18 Pa. C.S.A. § 2501, and volun-

2. In his statement to the police, appellant said that Kelly was striking his head with a brick. Leasa testified that Kelly had nothing in his hand throughout the fight, and Metrovich testified that it was too dark to see. A medical examination of appellant disclosed superficial head bruises.

538

tary manslaughter, 18 Pa. C.S.A. § 2503. (N.T., January 17, 1983, p. 602).

On the matter of passion and provocation, the court charged the jury as follows:

As indicated by the section 2501 that I read to you, homicide consists of murder, and murder is broken down into murder in the first degree, murder in the second degree and murder in the third degree.

And homicide also consists of voluntary manslaughter and involuntary manslaughter.

And those crimes are graded by their degree of severity.

.    .    .    .    .

Voluntary manslaughter appears in this scheme as a mitigated form of homicide. To find a person guilty of murder, the Commonwealth must prove that there has been an intentional killing, and they must prove also that the killing has been with malice.

Now, voluntary manslaughter is an intentional killing but without malice. And the element of the crime as it stands in the statute, as to killing upon provocation, and under intense passion, is there for the purpose of mitigating the crime of murder to one of voluntary manslaughter, because a killing under provocation and with intense passion is a killing without malice.

So, voluntary manslaughter we see is a mitigated form of murder.

Now, when voluntary manslaughter is charged alone, such as in this case, the Commonwealth need show only, one, an intentional killing by the defendant. It need not prove provocation and passion.

The fact that the killing was provoked and committed during a period of intense passion is not a defense to voluntary manslaughter.

(N.T., January 17, 1983, p. 603–604).

It is true that the court instructed the jury that if they find that appellant killed without justification, then they

must return a verdict of guilty on voluntary manslaughter. The court omitted an instruction on malice and provocation or passion because murder was not charged, and it considered the absence of malice a mitigating factor and not a defense.

Voluntary manslaughter occurs where there is a specific intent to kill, but said intent contains no malice by reason of passion or provocation. *Commonwealth v. Pitts,* 486 Pa. 212, 404 A.2d 1305 (1979); *Commonwealth v. Long,* 460 Pa. 461, 333 A.2d 865 (1975). Passion or provocation precludes malice, but has no effect on intent. Either passion or provocation explains why a crime is not murder, but neither is a necessary element of voluntary manslaughter.

We hold, therefore, that where the Commonwealth does not charge murder, but charges voluntary manslaughter alone, thereby conceding that malice does not exist, it is not necessary to charge the jury on passion or provocation. In these cases, it is sufficient to charge the jury that voluntary manslaughter occurs where there is a killing intended by the defendant without justification.

Appellant also complains that the charge was improper because it alluded to degrees of murder and erroneously defined voluntary manslaughter as first degree murder without malice. According to appellant, this confused the jury and prejudiced his case as he was prepared to discuss only the elements of voluntary manslaughter.

It is the court's duty to charge the jury in clear, commonplace language, without altering applicable legal principles. It is not mandatory that the court read verbatim the statutory definition of a crime, providing the statutory elements are not omitted, diluted or misconstrued through translation. *See Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975). Furthermore, it is proper to define a criminal offense through comparison to related, yet irrelevant offenses. It is the general effect of the charge that determines its propriety. *Commonwealth v. Rodgers,* 459 Pa. 129, 327 A.2d 118 (1974).

■ Accordingly, it was not error to instruct the jury on the degrees of murder. To draw a comparison to murder clarifies the classes of homicide and places voluntary manslaughter in a clearer light.

■ We do not believe that allusions to murder hindered appellant's case. Evidence was submitted on voluntary manslaughter, and the jury was well aware that it could return a verdict of guilty on voluntary manslaughter only; it could not return a verdict on murder as murder was not charged and there was no evidence of malice. Appellant prepared his case on voluntary manslaughter, the Commonwealth presented its case on that charge alone and the court charged accordingly.

■ Also, with respect to the charge, appellant argues that the court failed to instruct the jury on the Commonwealth's burden to prove each element of voluntary manslaughter beyond a reasonable doubt. At the beginning of the charge, the court said, "it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the defendant is guilty of that crime beyond a reasonable doubt." (N.T., January 17, 1983, p. 598). It proceeded to define voluntary manslaughter as "an intentional killing but without malice", (N.T., January 17, 1983, pp. 603–604), and set forth the Commonwealth's burden of proving that Allan Kelly was dead, that appellant killed him and that the killing was specifically intended without lawful justification. (*Id.* at 639). These instructions adequately explained the Commonwealth's burden of proving each element of the crime.

Appellant's final contention concerning the charge is that the court erred in instructing the jury that there is no justification if the jury is satisfied beyond a reasonable doubt that appellant did not reasonably believe that the use of deadly force was necessary. According to appellant, whether he reasonably believed that he killed Kelly to prevent serious bodily injury to himself is purely a subjec-

tive test. Appellant complains that the charge did not make this clear.

We agree with appellant that his belief in serious bodily injury must be reasonable in light of the facts as they appeared to him. *See Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974). That does not mean, however, that appellant himself determines what is a reasonable belief. There must be some standard by which his belief is measured. There was testimony concerning Kelly's actions while he struck appellant, and appellant did not present evidence to the contrary. The jury, then, was aware of how Kelly's actions appeared to appellant, and it was the jury's determination alone whether appellant's belief of serious bodily injury was reasonable. This latter portion of the test is not subjective; rather, it is objective. *See Commonwealth v. Palmer,* 467 Pa. 476, 359 A.2d 375 (1976).

Next, appellant argues that it was error to deny a charge on the decedent's prior acts of violence where self-defense was in issue. Appellant maintains that Kelly's prior violent acts were relevant for determining whether appellant reasonably believed he was facing imminent death or serious bodily injury. *See Commonwealth v. Beck,* 485 Pa. 475, 402 A.2d 1371 (1979).

Whether the court erred in denying this charge has been waived. Prior to the charge, appellant's counsel orally requested a charge on two prior incidents when Kelly and appellant fought. Kelly was the apparent victor on both occasions, and, as a result, appellant expressed his fear of him to friends. The court denied the charge because of its late submission. Following the charge, when the Court asked for objections and additions, counsel did not object to the court's refusal to charge on the decedent's prior acts of violence.

Pennsylvania Rule of Criminal Procedure 1119(b) states that no charge nor omission can be ruled erroneous unless objections are made prior to jury deliberation. In *Commonwealth v. Rineer,* 310 Pa.Super. 241, 456 A.2d 591

(1983), this court held "that in order to preserve an issue regarding the charge to the jury, a specific objection must be made pursuant to Pa.R. Crim.P. 1119(b), even where jury instructions have been timely offered and refused." *Id.*, 310 Pa.Superior Ct. at 249, 456 A.2d at 595. Submitting a jury instruction and following with an objection should the instruction be denied or misstated assures a fair opportunity to avoid error. *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977). Appellant failed to object prior to jury deliberation; therefore, he waived his argument which assigns error to the court's refusal to charge on the victim's prior acts of violence.

Next, appellant contends that counsel was ineffective for failing to present a timely request for an instruction on the victim's prior acts of violence.

Because we believe that evidence of Kelly's prior two acts of violence perpetrated on appellant was admissible for the purpose of determining whether appellant reasonably believed he was faced with imminent death or serious bodily injury, a jury charge pertaining thereto was appropriate. Insofar as counsel's request for such a charge was denied as untimely, we are constrained to hold that he was ineffective for failing to submit recommendations for charge in compliance with Pa. R. Crim. P. 1119(a).

In *Commonwealth v. Beck, supra*, the defendant alleged that he stabbed the victim in self-defense. It was held on appeal that he was permitted to introduce evidence that the victim was previously convicted of assaulting a police officer and had attacked two other individuals. It did not matter to the *Beck* court that the victim's aggressive actions were less serious than the defendant's act of assaulting with a deadly weapon. Accordingly, the *Beck* court stated:

> When the (victim's) prior conviction is for assault and battery, there is no need to compare the facts. Any difference is irrelevant. A conviction for assault and

battery necessarily implies a character involving aggressive propensities.

485 Pa. at 478–479, 402 A.2d at 1373.

In *Commonwealth v. Stewart*, 483 Pa. 176, 394 A.2d 968 (1978), a single violent act by the victim of drawing a gun during a gambling dispute in a pool hall, one month prior to the defendant's shooting the victim, was admissible as evidence of self-defense. Such evidence furnishes a basis for the defendant to believe that his life was in danger.

Since evidence of Kelly's prior fights with the decedent was admissible, a charge instructing the jury of the relevance of those prior acts on the defense of justification was appropriate. The denial of such a charge was not court error; instead, it was the result of an inadequate request for charge.

Appellant's counsel did not comply with Pa. R. Crim. P. 1119(a). Rule 1119(a) requires requests for jury instructions to "be submitted within a reasonable time before closing arguments." Counsel submitted his requests a few minutes prior to closing argument, and they were denied for late submission. Moreover, the rule intimates that the better practice is to submit jury instruction requests in writing with copies served on the other party. Counsel failed to submit written requests.

Since evidence of the victim's prior acts was critical to appellant's self-defense, appellant's claim that he was prejudiced by the absence of a charge on that evidence has merit. Secondly, counsel's failure to timely request an appropriate charge has no reasonable basis. Therefore, the two-prong test of ineffectiveness has been met. *Commonwealth v. Brinkley*, 505 Pa. 442, 480 A.2d 980 (1984); *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Garrity*, 331 Pa.Super. 475, 480 A.2d 1133 (1984).

Moreover, the absence of the charge did not constitute harmless error, as the jury did not know that the decedent's prior violent acts could serve as a basis for

appellant's belief that serious bodily injury was imminent. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Garvin,* 335 Pa.Super. 560, 485 A.2d 36 (1984).

Due to counsel's ineffectiveness, we are compelled to reverse and remand for new trial. This disposition renders it unnecessary to address appellant's remaining assertions of ineffectiveness and his arguments that the court erred in admitting certain statements made by him at the scene and in police custody and in imposing an excessive sentence. We do note, however, that these remaining arguments are meritless.

Judgment of sentence reversed. Remanded for new trial.