699 A.2d 1240

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Jamel WATLEY a/k/a Jamal Watley, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1996.

Decided July 29, 1997.

Robert E. Colville, Kevin F. McCarthy, Pittsburgh, for Appellant.

Robert A. Crisanti, Pittsburgh, for James Watley.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION*

ZAPPALA, Justice.

The issue presented in this appeal by the Commonwealth is whether the Superior Court erred in finding that trial counsel for Appellee Jamel Watley was ineffective for failing to request a jury instruction explaining the relevance of a defendant's knowledge of a victim's prior violent acts and violent reputation. For the following reasons, we find that the Superior Court erred in determining that Watley's trial counsel was ineffective.

On April 29, 1993, Watley was arrested and charged with criminal homicide, aggravated assault, criminal conspiracy and two counts of carrying a firearm without a license in connection with the shooting death of Ronald Ashby and the nonfatal shooting of Stephen Johnson. Charges were also filed against co-defendant Lester Thompson in connection with the shootings. Watley and Thompson were tried jointly before a jury.

The evidence introduced at trial established that Ronald Ashby was socializing with a group of people who had gathered outside of Gaylord Veney's home in the East Hills region

of Pittsburgh on April 27, 1993. Around midnight without warning, a barrage of bullets was fired at the group. A bullet struck the back of Ronald Ashby's head, causing him to fall to the ground. When the gunfire erupted, Stephen Johnson started to run and stumbled over Ashby's body. Johnson, who did not realize that he had been shot in the leg, was able to get up and retreated to the house of a next door neighbor. Johnson was unable to identify who had fired the shots and was unsure if the shots had come from different directions.

The City of Pittsburgh Police arrived on the scene within minutes of the shooting. Ashby died as a result of the gunshot wound. Johnson was transported to a hospital for treatment. The police interviewed people who were present at the scene and examined the area for evidence. Approximately twenty-six 9 mm casings were found in the area, along with six unfired AK rounds. Subsequent testing indicated that thirteen of the 9 mm casings were fired from a Smith and Wesson 9 mm weapon and twelve were fired from a 9 mm Glock automatic.

On April 29, 1993, City of Pittsburgh police officers accompanied Monroeville police officers to a motel to execute arrest warrants for Watley and Thompson for a robbery that had occurred in the home of Ashby's friend, Demetrius Ballard. The officers were informed by the night clerk that the men were staying in either Room 5 or Room 13. The police entered both rooms simultaneously. Room 5 was empty; eight people, including Watley and Thompson, were found in Room 13. The police seized a bulletproof vest that belonged to Thompson. A 9 mm semi-automatic Taurus, which was later identified as Watley's handgun, was found under the mattress. Ballistic tests indicated that the bullet recovered from Ashby's body was discharged from that weapon.

Watley did not give his correct name to the police when he was arrested, so the search for him continued. The search of another individual who was in Room 13 produced a key to a third motel room. In that room the police found a brown paper bag containing two weapons, a 9 mm Smith and Wesson and a 9 mm Glock. The weapons belonged to co-defendant

Thompson. Of the spent cartridge cases recovered from the crime scene, thirteen were identified as having been fired from the 9 mm Smith and Wesson and twelve as having been fired from the 9 mm Glock. Other cartridge cases were also found at the scene.

At trial both Watley and Thompson testified that they acted in self-defense in shooting at Ashby and his companion, Demetrius Ballard. It was widespread knowledge among their friends that Ashby and Ballard had threatened retaliation against Watley and Thompson for breaking into Ballard's house a few days before the shooting. Watley and Thompson had been discovered inside of Ballard's house by Ashby and Ballard. Watley admitted breaking into the house, explaining that he had decided to do that after becoming angry at Ballard's earlier accusations that Watley had been involved with his girlfriend.

Watley and Thompson testified that they went into hiding after being told by others that Ashby had threatened to kill them and because they were wanted for robbery. On the night of the shooting, they were driving in a car through the back of the East Hills area on their way to meet two women. They further testified that they were passed by a car driven by Ballard in which Ashby was a passenger, that Ballard's car stopped and made a U-turn, and that Ballard attempted to pursue them.

Watley and Thompson indicated that they turned the car off to the side of the road, hopped out of the car and ran into a nearby wooded area. The two men did not stay together after entering the woods. Ashby and Ballard returned to their car and left. Watley and Thompson remained in the woods after the men left.

Although they testified that they split up after they ran into the woods, both Watley and Thompson stated that they ended up at the back of Veney's house where the woods ended. Watley testified that Ballard, who was now at Veney's, spotted him and began pointing towards him. Watley claimed that Ballard started shooting at him and that he pulled out his own

weapon and fired one shot. When his gun jammed, Watley ran off. Thompson testified that he did not see Ashby pull out a weapon, but had heard a shot coming from where Ashby stood. Thompson then fired both of his weapons and ran.

On October 7, 1993, the jury found Watley and Thompson guilty of first degree murder, aggravated assault, criminal conspiracy, and the firearms violations. Watley was sentenced to life imprisonment on the murder conviction. No additional sentences were imposed on the remaining convictions. A motion for new trial and/or arrest of judgment nunc pro tunc filed on November 8, 1993, was denied. Watley's attorney then filed a motion to withdraw as counsel. The motion was granted and new counsel was appointed.

On appeal to the Superior Court, Watley asserted, inter alia, that his trial counsel was ineffective for failing to request that the jury be specifically instructed that it should consider the evidence relating to his knowledge of the victim's prior acts of violence and his reputation for being a violent person in evaluating the reasonableness of Watley's belief that it was necessary to use deadly force in self-defense. The Superior Court found that trial counsel was ineffective for failing to request the instruction, stating "[w]hen such evidence is introduced for the purpose of showing that the defendant reasonably believed his life to be in danger, he is entitled to have the jury instructed regarding the significance of this evidence to a claim of self-defense, and the failure of counsel to request such a jury instruction has been determined to constitute constitutionally ineffective assistance which requires that a new trial be granted." (Superior Court memorandum opinion at 18–19.) The Superior Court reversed the judgment of sentence and remanded the case for a new trial.

In reaching its conclusion, the Superior Court relied upon this Court's decision in *Commonwealth v. Stonehouse*, 521 Pa. 41, 555 A.2d 772 (1989) and its own decision in *Commonwealth v. Fisher*, 342 Pa.Super. 533, 493 A.2d 719 (1985). The Commonwealth asserts that *Stonehouse* and *Fisher* are distinguishable from this appeal because in those

cases, in order for the defendants to demonstrate the reasonableness of their beliefs, it was necessary to introduce evidence of a prior history of abuse at the hands of the victim to prove that their fear of imminent danger of death or serious bodily injury was reasonable. In this case, Watley testified that Ballard spotted him in the woods, pointed him out to Ashby, and that one of the men fired a weapon at him. Watley claimed that he fired his weapon only after a shot was fired by them. The Commonwealth asserts that the reasonableness of Watley's fear of death or serious bodily injury was obvious, assuming that the jury believed his testimony.

We proceed with a presumption that trial counsel was effective. *Commonwealth v. Blount*, 538 Pa. 156, 647 A.2d 199 (1994). To establish a claim of ineffectiveness, a defendant must demonstrate that (1) the underlying claim is of arguable merit; (2) the particular choice chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness was prejudicial. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Counsel will not be found ineffective for failing to raise a meritless claim.

During the trial, evidence of the victim's animosity and threats made against Watley was admitted. Watley was also permitted to introduce evidence of Ashby's reputation in the community as a violent person and that he was known to arm himself with an AK–47 assault weapon. There was a significant amount of testimony regarding Ashby's and Ballard's angry reaction to the break-in of Ballard's house by the co-defendants. Finally, the co-defendants testified that Ashby and Ballard had chased them in a car, forcing them to run into the woods to escape pursuit, and that Ashby or Ballard had fired the initial shot to which they returned fire.

The trial judge gave an extensive charge on the co-defendants' claim of self-defense.

The Defendants claim that Ronald Ashby was shot in self-defense. Self-defense, if justifiable, is a complete defense to the charge.

The Commonwealth has the burden of proving beyond a reasonable doubt that the Defendant did not act in justifiable self-defense.

The basic rule for self-defense is that a Defendant is justified in using force against another person if he reasonably believes he is in immediate danger of unlawful force from that person and reasonably believes that it is necessary then and there to use the force which he does use to protect himself.

Note that the Defendant's right of self-defense depends upon what he reasonably believes.

Thus, the right of self-defense may be available not only to a person who is in actual danger of unlawful attack, but also to one who mistakenly believes that he is.

A Defendant is entitled to estimate the necessity for the force he employs under the circumstances as he reasonably believes them to be at the time.

In the heat of conflict, a person who has been attacked ordinarily has neither the time nor the composure to evaluate carefully the danger and make nice judgments about exactly how much force is needed to protect himself.

Be realistic. Consider the limitations of human nature when judging what the Defendant believed and whether his beliefs were reasonable.

There are other requirements for justifiable self-defense homicides besides those in the basic rule. The additional requirements are more restrictive if the Defendant uses deadly force to protect himself than if he does not use— excuse me—than if he uses non-deadly force.

The deadly force is force which under the circumstances in which it is used is readily capable of causing death or serious bodily injury.

According to my definition, force is not deadly force simply because it happens to kill or seriously injure.

For example, a slap in the face which freakishly and unexpectedly leads to death is not deadly force. Deadly force has to be force which, under the circumstances in

which it is used is readily capable of causing death or serious bodily injury.

If a Defendant employs deadly force to protect himself, his use of force must meet the following requirements as well as the basic rule:

The Defendant must reasonably believe he is in immediate danger of death or serious bodily injury from the other person and reasonably believes it is necessary, then and there, to use deadly force upon that person to protect himself.

The Defendant must have been free from fault in provoking or continuing the difficulty which led to his use of deadly force and the Defendant must have violated no duty to retreat.

As a general rule, a Defendant has a duty to retreat before resorting to deadly force in self-defense if he knows that he can avoid the necessity of using such force with complete safety by retreating.

When choosing which requirements to utilize in judging the Defendant's claims of justifiable self-defense, you will have to decide whether the Defendants used deadly force or non-deadly force.

Give the Defendants the benefit of any reasonable doubt. Choose the requirements which are more favorable to the Defendant, unless you are satisfied beyond a reasonable doubt that the other requirements apply.

Because the Commonwealth has the burden of disproving the Defendant's claim of self-defense, you cannot find the Defendants guilty of any crime unless you are satisfied beyond a reasonable doubt that the Defendants did not act in justifiable self-defense.

In other words, you cannot find the Defendants guilty unless you are satisfied beyond a reasonable doubt that at least one requirement is [sic] essential to that defense is lacking.

More particularly, you cannot find the Defendants guilty of any crime, unless you are satisfied beyond a reasonable

doubt that the Defendants did not reasonably believe that they were in immediate danger of death or serious bodily injury from Ronald Ashby or Demetrius Ballard or that the Defendants did not reasonably believe it was necessary then and there to use deadly force to protect themselves or that the Defendant was not free from fault in provoking or continuing the difficulty which led to his use of deadly force or that the Defendant violated a duty to retreat.

R. 887a–891a.

Defense counsel did not object to the charge or request a specific instruction that the jury should consider the evidence relating to Watley's knowledge of Ashby's prior violent acts and reputation in evaluating the reasonableness of his belief that it was necessary to use deadly force in self-defense. The Commonwealth asserts that the instructions as given were sufficient to apprise the jury that it was required to consider whether Watley's belief that he was in imminent danger was reasonable and, if so, to find that he acted justifiably in using deadly force. It is further asserted that a defendant is only entitled to a specific instruction relating to the effect of his knowledge of the prior violent acts of the victim when there is some question as to the reasonableness of the defendant's belief, i.e., where there is little or no evidence that the defendant was in immediate or imminent danger of death or serious bodily injury.

In *Commonwealth v. Stonehouse,* the defendant fatally shot her former boyfriend during the course of an incident in which he had threatened her with a weapon. The victim had left the defendant's apartment, but the defendant was concerned that he would return. The defendant walked out to her back porch to look for him. She testified at trial that she saw the victim when she leaned over the porch railing. She saw the defendant aiming his gun at her and, thinking that she heard a shot, fired her gun twice. The victim was found dead with a revolver in his hand, but the weapon had not been fired.

The defendant introduced evidence at trial that the victim had repeatedly harassed and stalked her over the three-year

period from when she began to date him and the final episode that resulted in his death. She recounted innumerable incidents of physical and emotional abuse. The victim repeatedly broke into her apartment and destroyed her personal belongings and threatened her with physical harm.

The defendant was convicted of third degree murder. On appeal, she asserted that trial counsel was ineffective in failing to request a jury instruction that would require consideration of the cumulative effects of psychological and physical abuse when assessing the reasonableness of her fear of imminent danger of death or serious bodily harm with respect to her claim of self-defense. In a plurality opinion, we held that trial counsel was ineffective for failing to request such instruction and remanded for a new trial.[1] The opinion relied upon *Commonwealth v. Watson*, 494 Pa. 467, 472–73, 431 A.2d 949, 952 (1981) in which we stated that, "[where] there has been physical abuse over a long period of time, the circumstances which assist the court in determining the reasonableness of a defendant's fear of death or serious injury at the time of a killing include the defendant's familiarity with the victim's behavior in the past." For this reason, we found that the jury should have been apprised of the fact that the abuse suffered by the defendant for three years was to be considered with respect to the reasonableness of the defendant's fear of imminent danger of death or serious bodily injury.

In *Commonwealth v. Fisher*, several teenagers were having a party during which the defendant became jealous of an

---

1. The Opinion Announcing the Judgment of the Court represented the views of only three of the seven justices. This author filed a concurring opinion, which was joined by Justice Flaherty (now Chief Justice Flaherty), agreeing that trial counsel was ineffective in failing to request an instruction that would have provided guidance to the jury as to the import of the history of abuse in determining whether the defendant reasonably believed that she was in danger of death or serious bodily injury. The concurring opinion stated that there was no need to address the separate issue of whether a defense referred to as "battered woman syndrome" should be recognized under the law of the Commonwealth. Chief Justice Nix and Justice McDermott dissented on the basis that "battered woman syndrome" was not an issue in the case and that the defendant had proceeded at trial only on the basis of a traditional self-defense claim.

exchange of affection between his girlfriend and another boy. The boy tackled the defendant when he began berating his girlfriend and a fight ensued. The defendant was overpowered and was repeatedly punched in the face and chest. The defendant pleaded with the boy to stop and momentarily freed himself. The boy tackled and punched him again. The defendant then took an eight-inch buck knife from a sheath attached to his belt and stabbed the boy twice in the chest. The boy later died.

The defendant was convicted of voluntary manslaughter. The Superior Court reversed the judgment of sentence and remanded for a new trial on the basis that trial counsel was ineffective for failing to present a timely request for an instruction on the victim's prior acts of violence. The defendant had introduced evidence at trial that he had been involved in fights with the victim on two previous occasions. The victim had won both of those fights and the defendant had expressed his fear of him to friends. The Superior Court found that evidence of the victim's prior two acts of violence was admissible for the purpose of determining whether the defendant reasonably believed he was faced with imminent death or serious bodily injury and that a jury charge to that effect was appropriate. Therefore, trial counsel was found to be ineffective for failing to request the charge.

We agree with the Commonwealth that *Stonehouse* and *Fisher* are distinguishable from this case. In each of those cases it was the defendant who introduced the use of deadly force and, in order to demonstrate the reasonableness of their beliefs of imminent death or serious bodily injury, it was necessary to introduce evidence of their prior histories of abuse at the hands of the victims to prove that their fear was reasonable. The victim in *Stonehouse* had left the defendant's apartment and the defendant immediately went outside of the apartment to find him; the unarmed victim in *Fisher* was attacked by the defendant with a knife. The defendants claimed that they responded as they did because the victims' prior acts of violence directed at them had caused them to fear death or bodily injury. The mental state of each of the

defendants was a relevant consideration for the jury in determining the reasonableness of those fears.

■ *Stonehouse* and *Fisher* do not stand for the proposition that in every case in which the claim of self-defense is raised the jury must be instructed to consider the defendant's knowledge of the victim's prior violent acts or violent reputation in evaluating the reasonableness of the defendant's belief that it was necessary to use deadly force. Nor does trial counsel's failure to request such an instruction automatically entitle a defendant to a new trial. The court must consider the factual circumstances in which the claim of self-defense arises.

The facts of this case did not require that the instruction be given. Watley testified that Ashby and Ballard pursued him in their car and that he eluded them by running into the woods. Watley remained in the woods until Ashby and Ballard left in the car. His version of the events that followed was that he considered going back to his own car, but decided against it because he thought that Ashby and Ballard might be lurking in the area. Instead, Watley continued up the hill into the woods and found himself behind Veney's house. Watley claimed that he was shot at first by Ashby or Ballard and fired back. The reasonableness of one's fear of imminent death or serious bodily injury when fired upon is a matter that does not require further explication by the court.

■ We find that the trial court's instructions adequately and accurately explained the law to the jury and that trial counsel was not ineffective in failing to request additional instructions. The mere fact that a defendant may believe that further explanation would have been beneficial does not render a charge defective. *Commonwealth v. Blount,* 538 Pa. at 174, 647 A.2d at 209.

The order of the Superior Court is reversed and the judgment of sentence is reinstated.