J-A24026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                               :                PENNSYLVANIA
                               :
              v.                     :
                               :
                               :
KYLE CARTER                  :
                               :
            Appellant           :     No. 2174 EDA 2021

Appeal from the PCRA Order Entered September 24, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005038-2012

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:            **FILED MARCH 28, 2023**

Kyle Carter appeals from the order entered in the Philadelphia County Court of Common Pleas on September 24, 2021, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Carter raises multiple issues on appeal, including numerous claims of ineffective assistance of counsel. After careful review, we affirm.

We previously adopted the factual history as set forth by the trial court on direct appeal as follows:

> At trial, the Commonwealth presented the testimony of William Deas, Leon Monroe, Shanheed Perrin, Dorenda Wicker, Tanya Wiley, Dr. Gary Lincoln Collins, Philadelphia Police Officers Anthony Glaviano and Christopher Reed, Philadelphia Police Detective Jonathan Ruth, and Philadelphia Police Sergeants Brian Beaudet and Daniel Ayres. [Carter] testified on his own behalf and offered, by stipulation, the testimony of Coy Hudgens, Professor Anthony Dandridge, Carmen Coleman, Barbara Wilkins, Chad Davis, Candice Bing, and Dijon Davis. Viewed in the light most

favorable to the Commonwealth as the verdict winner, their testimony established the following.

On February 23, 2012, at approximately 1 a.m., Leon Monroe, Erick Thompson, and "Rel" were at a bar in the Glenside neighborhood of Philadelphia when they decided to go to Club Onyx, a gentleman's club in South Philadelphia. When the three men arrived at the club, they encountered Shanheed Perrin, who was working security for the club that night. Perrin asked the men for identification in order to enter the club, which Monroe and Rel produced. [Brock] informed Perrin that he did not have his ID with him, and Perrin told [Brock] that he could not enter the club without it. [Brock] became upset and placed a call to another security guard who was inside the club, Rob, whom [Brock] knew. Rob then came outside and, after patting down [Brock] and his friends for weapons, escorted them into the club.

Approximately one hour later, at 2 a.m., [Brock] emerged from the club onto the club's porch with the head of the club's security, William Deas. [Brock] pointed out Perrin to Deas, and said that Perrin would not let [Brock] in the club earlier. As Deas tried to calm [Brock] down, [Brock] began yelling at Perrin. Perrin yelled back at [Brock], then stopped arguing with him and assumed his position at the club's door.

At that point, [Carter], an off-duty security officer for Club Onyx, approached [Brock] and began arguing with him. [Brock] yelled back at [Carter], who then pulled out a gun and said to [Brock] and his friends, "y'all got five seconds to leave off the porch." [Brock] then counted down, "five, four, three, two, one," but [Brock] remained on the porch. [Carter] then immediately shot [Brock] in the neck. [Carter] then walked to his car, got in, and drove away.

Shanheed Perrin called 911. The police arrived and transported [Brock] to Jefferson Hospital. [Brock] was in critical condition when he arrived at the hospital, where doctors performed emergency surgery. After surgery, doctors determined that [Brock] was brain dead. He was removed from life support and died on February 26, 2012.

Police recovered one .45 caliber cartridge casing from the club's porch. [Carter] surrendered to the police on February 24, 2012.

[When police subsequently searched Carter's residence and vehicle, they did not find the firearm used to kill Brock.]

On May 16, 2012, Philadelphia Police Sergeant Daniel Ayres was patrolling the Mount Airy area of Philadelphia when he pulled over [Carter]'s brother, Vernon Carter, for a traffic violation. Vernon Carter was driving [Carter]'s car. From the car, Sergeant Ayres recovered a .45 caliber handgun containing nine rounds of ammunition. This .45 caliber handgun was positively matched to the fired cartridge casing found at the scene of the shooting.

Sergeant Ayres also recovered a note from the vehicle that read, "I, Kyle Carter, authorize my brother Vernon Carter permission to receive my car from the police impound." The document also listed the vehicle's identification number (VIN), and the make, model, and color of the car. The document bore the signature, "Kyle B. Carter." The document also bore the stamp of a notary public, but did not contain the notary's seal, date, or signature.

Trial Court Opinion, 4/21/14, at 2-4 (citations omitted); **see also**

**Commonwealth v. Carter**, 906 EDA 2017 (Pa. Super. filed April 24, 2018) (unpublished memorandum).

On July 19, 2013, a jury found Carter guilty of third degree murder. On September 20, 2013, after denying Carter's oral motion for extraordinary relief, the trial court sentenced Carter to eighteen to forty years' incarceration. Carter filed post-sentence motions, which were denied. Carter timely appealed, but this Court later dismissed the appeal for failure to file a brief. Carter was represented at trial and on appeal by Michael Coard, Esquire.

Carter filed a successful PCRA petition and was granted reinstatement of his appellate rights *nunc pro tunc*. Carter timely appealed, and this Court affirmed his judgment of sentence. **See Carter**, 906 EDA 2017.

On October 10, 2018, Carter filed the instant *pro se* PCRA petition alleging Attorney Coard was ineffective at trial. Counsel was appointed and filed an amended petition. Counsel was subsequently granted permission to withdraw due to a conflict, and new counsel was appointed and filed a supplemental petition.

After the Commonwealth filed a motion to dismiss, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Carter responded, seeking to amend the petition with two new claims. The PCRA court permitted the amendment. The Commonwealth filed a motion to dismiss the new claims. On August 6, 2021, the PCRA court issued a Rule 907 notice. On September 24, 2021, the PCRA court dismissed the petition as meritless. This timely appeal followed.

On appeal, Carter raises the following twelve issues for our review:

1. Was trial counsel ineffective for failing to preserve an objection to the trial court's modification to the "castle doctrine"?

2. Did the PCRA court err by denying certification to the Superior Court nunc pro tunc on Issue 1 concerning the castle doctrine jury instruction?

3. Was trial counsel ineffective for failing to introduce into evidence court records documenting two prior bad acts by the decedent?

4. Was trial counsel ineffective for failing to request specific instructions in the justification charge and voluntary manslaughter charges regarding the decedent's prior bad acts of violence?

5. Was trial counsel ineffective for failing to litigate a motion in limine, or request a cautionary instruction regarding firearms evidence unrelated to the shooting?

- 4 -

6. Was trial counsel ineffective for failing to object to life-in-being testimony?

7. Was trial counsel ineffective for failing to subpoena and cross-examine eyewitness Shanheed Perrin with his Robbery crimen falsi conviction?

8. Was trial counsel ineffective for failing to subpoena and introduce the victim's medical records?

9. Was trial counsel ineffective for failing to obtain Appellant's express consent to stipulate to the character witnesses?

10. Was trial counsel ineffective for failing to effectively cross-examine William Deas on an inconsistent statement under Pa. R. Evidence 613?

11. Was trial counsel ineffective for failing to meet a minimum standard of effective performance under ***Commonwealth v. Brooks, 839 A.2d 245 (Pa. 2003)***

12. Did the "cumulative impact" of trial counsel's ineffectiveness as asserted in the issues set forth herein and all PCRA petitions violate the Appellant's right to a fair trial?

Appellant's Brief, at 8-9 (suggested answers omitted).

Our review of an order dismissing a PCRA petition is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. ***See Commonwealth v. Shaw***, 217 A.3d 265, 269 (Pa. Super. 2019). Although we give great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record, we apply a *de novo* standard of review to the PCRA court's legal conclusions. ***See Commonwealth v. Benner,*** 147 A.3d 915, 919 (Pa. Super. 2016).

- 5 -

A majority of Carter's claims challenge the effectiveness of his trial counsel. Counsel is presumed to have been effective. *See Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and prevail on a claim of ineffectiveness, Carter must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for their conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different. *See id.* As is true for all petitioners, Carter's "failure to prove any one of the three prongs results in the failure of [his] claim." *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011) (citation omitted).

In his first issue on appeal, Carter contends his trial counsel rendered ineffective assistance of counsel by failing to preserve an objection to the trial court's modification to the "castle doctrine" jury instruction.

At trial, Carter argued that he acted in self-defense when he shot and killed the decedent, pursuant to the "castle doctrine", codified at 18 Pa.C.S.A. § 505(b)(2). Section 505(b) sets forth the limitations on the defense of justification, in pertinent part, as follows:

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
> …

(ii) The actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505(b)(2). The term "place of work" is not defined by the Crimes Code.

At trial, the court instructed the jury as follows:

A duty to retreat arises where the defendant knows he could avoid the necessity of using deadly force with complete safety by retreating himself or by trying to cause the person he was trying to protect to retreat. However, there are certain exceptions to this duty to retreat. In particular, a defendant is not obliged to retreat from his place of work unless he was the initial aggressor, nor is he required to retreat if the person he seeks to protect was at that person's place of work at that time, unless, once again, the defendant was the initial aggressor. If he was the initial aggressor, he has [a] duty to retreat.

Therefore, if you find that defendant at the time of the shooting here at issue **was then and there engaged in his occupation**, or that he was trying to protect another person who was then and there engaged in his occupation, then defendant is not under a duty to retreat unless he was [the] initial aggressor.

But if the Commonwealth proves any one of these elements beyond a reasonable doubt, then the actions of the defendant in using deadly force are not justified. If [the] Commonwealth fails to prove any of these elements, the defendant's action was justified and you must find him not guilty.

N.T., 7/18/13, at 27-28 (emphasis added).

Carter argues the court modified the charge such that it violated his due process rights. Specifically, Carter argues the trial court's indication that there must be a finding that Carter was "then and there engaged in his occupation"

shifted the burden from the Commonwealth to Carter, to prove that he was at his place of work. We disagree.

A jury instruction must be evaluated as a whole. *See Commonwealth v. Cox*, 863 A.2d 536, 549 (Pa. 2004). Here, we do not read the court's jury instruction as shifting the burden when read in context. In contrast, as stated in the paragraph directly following the statement at issue, the trial court clearly stated that the justification defense hinged on whether or not the Commonwealth met its burden. In addition, the trial court noted this same requirement numerous times throughout the jury instructions. *See e.g.,* N.T. 7/18/13, at 23 ("Since the Commonwealth has the burden of proof in this case, the Commonwealth must prove to you that defendant did not act in justifiable self-defense or in justifiable defense of another person beyond a reasonable doubt"); and *id*. at 29 ("Now once the defendant raises the issue of self-defense or defense of another, it is [the] Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in justifiable self-defense or justifiable defense of another person").

As we find the jury instruction was proper, Carter's underlying claim lacks arguable merit, and therefore trial counsel cannot be found ineffective for failing to object to it.

In his second issue on appeal, Carter argues the PCRA court erred by denying a request for certification of the above castle doctrine jury instruction issue to our Court *nunc pro tunc* pursuant to *Commonwealth v. Little*, 246

A.3d 312 (Pa. Super. 2021). In **Little**, trial counsel sought preclusion of evidence that a witness was not at risk for punishment for his jailhouse confession through a motion *in limine*. Trial counsel argued that the witness was at risk for the death penalty for the murder to which he was confessing. The trial court denied the motion *in limine*. When the Commonwealth presented the challenged evidence, trial counsel did not object, nor did counsel object when the trial court prohibited counsel from questioning the witness on his knowledge of the possible penalties for the crime. On direct appeal, this Court held that trial counsel had waived the issue by failing to object to the evidence when presented. **See Little**, 246 A.3d at 320. On collateral review, Little argued that trial counsel was ineffective for failing to properly preserve his challenge to the evidence. A panel of this Court agreed, and granted Little the right to a direct appeal of this issue. **See id**. at 331-32.

Here, while Carter's argument is not well developed on appeal, we take Carter to be reiterating his first issue, but instead of asking for a new trial, he is asking for restoration of his direct appeal rights. However, as we conclude there is no arguable merit to Carter's first claim, we likewise conclude there is no arguable merit to this contention. **Little** is distinguishable because Carter's trial counsel never objected to the trial court's instruction on place of work. Therefore, unlike **Little**, we are not reviewing a situation where we already know how the trial court would have responded to Carter's argument. Instead, we are performing our traditional role on collateral review of

assessing whether trial counsel was ineffective for failing to object. **Little** does not apply under these circumstances, and Carter's second issue on appeal merits no relief.

In his third issue on appeal, Carter argues trial counsel was ineffective for failing to introduce into evidence court records documenting Brock's two prior convictions, as well as a prior arrest for robbery for which he had been acquitted after trial.

An accused may offer character evidence of the victim only where self-defense is alleged. **See Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1256 (Pa. Super. 2014). The Pennsylvania Supreme Court has stated:

> [W]here a defendant alleges self-defense, he may use his deceased victim's criminal record either (1) to corroborate his alleged knowledge of the victim's quarrelsome and violent character to show that the defendant reasonably believed that his life was in danger; or (2) to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor.

**Commonwealth v. Amos**, 284 A.2d 748, 751 (Pa. 1971). Since Carter alleged self-defense in this matter, he could have used character evidence of the victim pursuant to **Amos**.

However, Carter has failed to establish the third prong of the ineffectiveness test, prejudice, for this claim. To establish prejudice, Little was required to establish that "there was a reasonable probability of a different outcome if not for counsel's error." **Commonwealth v. Medina**, 209 A.3d 992, 1000 (Pa. Super. 2019) (citation omitted).

We begin by noting that the jury was presented with evidence of Brock's violent history. Carter specifically testified regarding Brock's propensity for violence. *See* N.T., 7/17/13, at 53-55. Carter testified that Brock had "robbery, assault, weapons charges." *Id.* He also stated that Brock had been ejected from the club several weeks earlier. *Id.* at 53.

So the jury heard evidence supporting Carter's contention that he believed Brock was violent and dangerous. Admittedly, this evidence was admitted only for that purpose. *See id.* at 52-53 (trial court instructing jury that Carter's testimony about Brock's history was being admitted only for the purpose of establishing Carter's mental state, but not for the truth of the issue of whether Brock indeed had a criminal history). In contrast, evidence of Brock's past criminal history could have been admitted for the purpose of showing that Brock was in fact a violent person. *See Amos*, 284 A.2d at 751.

Despite this, we conclude the record does not support a conclusion that there is a reasonable probability the jury would have returned a different verdict if Carter had presented evidence of Brock's prior criminal history. The Commonwealth entered substantial evidence on the record, including video evidence including different camera angles from Club Onyx, showing all of the actions of different individuals leading up to the shooting, and eye-witness testimony from multiple people who were either working or at the club the night of the shooting. Finally, the Commonwealth presented evidence of consciousness of guilt. Specifically, Sergeant Daniel Ayres testified that a few

months after the murder, he performed a traffic stop on a vehicle driven by Carter's brother. After a search of the vehicle, Sergeant Ayres recovered a firearm and a notarized letter from Carter, authorizing his brother to retrieve his vehicle from a police impound lot after Carter's arrest. *See* N.T., 7/16/13, at 269-273. The vehicle driven by Carter's brother matched the description of Carter's vehicle in the note including VIN number, make, model, and color. Further, a stipulation was entered on the record that the fired cartridge casing recovered at the scene was fired from the firearm found in the vehicle. *See id*. at 278. This evidence that Carter had secreted the murder weapon to a close family member was entered to show consciousness of guilt, along with evidence that Carter had owned numerous firearms, none of which could be found during a search of his home. In the face of all this evidence, the jury chose to credit the unbiased eye-witness testimony over Carter's self-serving testimony. We cannot conclude the explicit admission of Brock's criminal history would have had a reasonable probability of changing this credibility determination, and therefore the outcome of the trial.

In his fourth issue on appeal, Carter contends trial counsel was ineffective for failing to request specific instructions in the justification and voluntary manslaughter charges regarding Brock's prior violent acts.

In support of this contention, Carter relies upon *Commonwealth v. Fisher,* 493 A.2d 719 (Pa. Super. 1985). In *Fisher,* the appellant stabbed the victim twice in the chest, but claimed he did so in self-defense after the victim

tackled him and repeatedly struck the appellant in the head with his fists. *See id.* at 720–21. The appellant introduced evidence of two previous occasions when the victim had beaten him. *See id.* at 723. However, the trial court denied the appellant's request that a jury instruction be given explaining that the two acts of violence perpetrated on the appellant were admissible for the purpose of determining whether appellant reasonably believed he was faced with imminent death or serious bodily injury. *See id.* On appeal, the appellant claimed trial counsel was ineffective for failing to timely submit a proposed jury charge. *See id.* A panel of this Court agreed and held that, since the victim's initial aggression was of non-deadly force, a charge instructing the jury of the relevance of the victim's prior acts on the defense of justification was appropriate. *See id.* at 724.

However, our Supreme Court has subsequently limited the breadth of *Fisher*. *See Commonwealth v. Watley*, 699 A.2d 1240, 1245 (Pa. 1997). Specifically, *Watley* provides that *Fisher* instructions regarding prior acts of violence are not necessary in every case in which the claim of self-defense is raised based on admission of prior acts of violence. Rather, the trial court must consider the factual circumstances in which the claim of self-defense arises. *See Id.* For example, under the facts presented there, the *Watley* Court found Watley's testimony that one of the victims had shot at him first was obviously life threatening such that the jury did not require any further

explanation from the court. *See id.* Watley's testimony, if believed by the jury, was enough to demonstrate his belief was reasonable. *See id.*

Here, Carter testified he feared for his life, and the lives of others, when the decedent threatened to kill a security guard and charged the security guard while reaching for her gun. Carter's testimony, if believed by the jury, was enough to demonstrate reasonable fear of death or serious bodily injury and, therefore, the trial court was not required to give the jury a *Fisher* instruction. Therefore, counsel was not ineffective for failing to pursue this jury instruction and petitioner's claim is without merit.

In his fifth issue on appeal, Carter argues trial counsel was ineffective for failing to litigate a motion *in limine*, or request a cautionary instruction regarding firearms evidence unrelated to the shooting. Specifically, aside from introducing into evidence the weapon used in the shooting, a Glock .45, the prosecutor additionally introduced two exhibits consisting of paperwork for numerous firearms owned by Carter. We find no relief is due.

"The general rule is that where a weapon can not be specifically linked to a crime, such weapon is not admissible as evidence." *Commonwealth v. Robinson*, 721 A.2d 344, 351 (Pa. 1998). Nevertheless, an exception to this rule occurs "where the accused had a weapon or implement suitable to the commission of the crime charged." *Id*. (internal quotation marks omitted). Further, evidence of possession of a weapon other than murder weapon can be admitted if the Commonwealth identifies an otherwise proper purpose for

the evidence. *See Commonwealth v. DeJesus*, 880 A.2d 608, 615 (Pa. 2005).

There, two witnesses testified that several months after the murder in question, they saw the defendant in possession of a sawed-off shotgun, which "was unquestionably not the murder weapon." *Id.* at 615. The trial court allowed this evidence, finding "it tended to prove that the defendant had a weapon similar to the one used in preparation of the crime he was currently charged with." *Id.*

The Court affirmed, concluding that the evidence of record showed that the defendant knew of his fugitive status and intended to evade police custody, which in turn suggested his consciousness of guilt. *See id.* "[T]estimony … that appellant possessed a sawed-off shotgun was support for the implication that appellant was serious in his intention to continue to evade – indeed, that he had the means to repel – police custody." *Id.*

Here, the Commonwealth introduced evidence that Carter owned guns, none of which were found during a search of his home, to attempt to show he must have removed the guns from his home, including the murder weapon. *See* N.T., 7/17/13, at 202 ("The sixteen guns in his house isn't to show you he [is] a gun-toting thug. The 16 guns in his house is to show you he knew the police were coming for him and he got rid of all the weapons so that they can't be found or traced. Consciousness of guilt, that is knowing you did something wrong."). Further, the trial court instructed the jury that this

evidence was relevant to Carter's consciousness of guilt. *See* N.T., 7/18/13, at 17 ("You also heard evidence in this case tending to show [Carter] may have attempted to conceal the firearm that was allegedly used in the shooting that is at issue in this case. If you believe this evidence, you may consider it as [] tending to prove [Carter]'s consciousness of guilt. You are not required to do so."). As in *DeJesus*, the challenged evidence was properly used for the purpose of proving consciousness of guilt. Therefore, Carter has failed to establish that a motion to exclude the evidence would have been successful. He therefore fails to establish this claim has arguable merit.

In his sixth issue on appeal, Carter argues trial counsel was ineffective for failing to object to testimony from Brock's mother. During the guilt phase of trial, Brock's mother testified that she last saw Brock before he was shot the prior Friday. The next time she saw him was in the hospital after he was shot; and that she remembered the date Brock passed away because his daughter was born on the same day. *See* N.T., 7/17/13, at 26-28.

On appeal, Carter argues Brock's mother's testimony should not have been admitted because it was cumulative and overly prejudicial and was improper victim impact evidence. The trial court found, and the Commonwealth agreed, that the testimony was life-in-being testimony and was properly admitted to establish that the decedent was alive and well before the shooting.

While victim impact evidence is not admissible until sentencing, life-in-being testimony is admissible during the guilt phase of a murder trial when it is proffered to show the victim was alive at a time prior to the murder, and therefore is relevant to the first element of murder, that a human being was unlawfully killed. **See Commonwealth v. Jordan**, 65 A.3d 318, 333 (Pa. 2013).

Here, however, there is no dispute that Brock was alive prior to the shooting. Further, Brock's mother's testimony was not necessary as life-in-being testimony, as the medical examiner and other witnesses had already testified in this regard. **See Commonwealth v. Rivers**, 644 A.2d 710, 716 (Pa. 1994) (concluding admission of a photograph of the victim, taken prior to her death, as life-in-being evidence was erroneous where the existence of the victim as a life-in-being had already been established by the testimony of two witnesses and the coroner and was proffered solely to engender sympathy for the victim since it irrelevant to the central issue at trial regarding the guilt or innocence of the defendant).

As Brock's mother's testimony was not necessary as life-in-being testimony, it assumed the character of victim impact evidence, which is inadmissible during the guilt phase of trial. Therefore, Brock has established the arguable merit prong of this ineffective assistance of counsel claim. However, we decline to hold that Carter is entitled to relief because Carter was not prejudiced by such error.

The trial court clearly instructed the jury that it must not decide the case based on sympathy. *See* N.T., 7/18/13, at 5-6. We presume the jury followed the court's instructions. *See Commonwealth v. Hutchinson*, 25 A.3d 277, 296 (Pa. 2011). Given the plethora of evidence of the circumstances that led to the shooting from eyewitnesses and recorded video, combined with the trial court's clear instructions to the jury to decide the case objectively based on the evidence, we conclude Carter suffered no prejudice from the error in the admission of this brief passage in Brock's mother's testimony. Accordingly, Carter is entitled to no relief on his sixth issue.

In his seventh issue on appeal, Carter argues trial counsel was ineffective for failing to introduce *crimen falsi* evidence to impeach Shanheed Perrin. Generally, evidence that a witness was convicted of a *crimen falsi* offense, i.e., a crime involving dishonesty or false statement, is admissible to attack the credibility of the witness. *See* Pa.R.E. 609(a). However, if more than ten years have passed since the witness's conviction, or release from confinement, whichever is later, evidence of the conviction is only admissible if its probative value substantially outweighs its prejudicial effect, and the proponent gives the adverse party reasonable written notice of the intent to use the conviction. *See* Pa.R.E. 609(b).

Carter contends trial counsel should have impeached Perrin with the fact that he was convicted of robbery in 1997, sixteen years prior to the start of Carter's trial. Carter argues that he was prejudiced by this failure "because it

was relevant to evaluating the credibility of Perrin [who] testified that [Carter] was not on duty." Appellant's Brief, at 42. Carter contends that if the jury believed Perrin's testimony on this issue, it could have concluded he violated his duty to retreat under the castle doctrine. While the issue of whether Carter was on-duty was disputed at trial, we cannot conclude that Carter has established the jury concluded he violated his duty to retreat under the castle doctrine. The Commonwealth never argued that Carter violated a duty to retreat; rather, the prosecutor focused on whether Carter had a reasonable belief deadly force was necessary to protect himself or another person. **See** N.T., 7/17/13, at 195 ("Nobody felt threatened."); 197 ("Either way, that is five seconds to think and stop and use your training … and determine if anyone was in danger. And no one was."); 207-08 ("He had no reason to fear [Brock] at that moment. No one else did. [Brock] was not [anywhere] near him, wasn't coming near him, didn't have a weapon, nothing. There is nothing that is justified in killing another human being under those circumstances."). Carter has not established that Perrin's testimony that Carter was off-duty on the night of the shooting affected the verdict. As a result, he has not established that he was prejudiced by counsel's failure to impeach Perrin with Perrin's 16-year-old robbery conviction.

In his eighth issue on appeal, Carter claims trial counsel was ineffective for failing to subpoena Brock's medical records and introduce them into evidence. Specifically, Carter argues these records "would have provided

crucial corroboration that the decedent was the aggressor" by emphasizing the trajectory of the bullet was downward. Appellant's Brief, at 43.

The medical examiner testified on direct examination at trial. As part of the medical examiner's testimony, the Commonwealth admitted the medical records currently at issue as evidence. *See* N.T., 7/17/13, at 13. In fact, Carter cites to the exhibit containing the medical records in his appellate brief. *See* Appellant's Brief, at 43. Further, the medical examiner specifically testified that the bullet path was "slightly downward". N.T. 7/17/13, at 19.

As the medical records were included in the record, and the medical examiner testified regarding the bullet's path, Carter cannot show he was prejudiced by trial counsel's alleged failure to subpoena and enter the same medical records in order to elicit testimony that was nevertheless provided.

In his ninth issue on appeal, Carter argues trial counsel was ineffective for failing to obtain Carter's express consent to enter character evidence through stipulation rather than by live witness testimony. Specifically, Carter argues that two character witnesses, Coy Hudgens and Professor Anthony Dandridge, were available to testify and would have testified that Carter enjoyed an excellent reputation in the community for being peaceful, law-abiding, non-violent, and honest.

This Court has held that trial counsel will not be deemed constitutionally ineffective for introducing character evidence by stipulation rather than live testimony where the jury is instructed that the stipulation is to be considered

as evidence, and the jury is fully instructed as to the proper use to be made of the evidence. *See Commonwealth v. Thuy*, 623 A.2d 327, 334 (Pa. Super. 1993). "Whether to use live witnesses or place before the jury [a defendant's] good character by stipulation is nothing more than a strategic decision. It cannot be said that no competent lawyer would proceed [in that manner]". *Id*.

Here, trial counsel presented evidence of Carter's character by stipulation that seven members of the community would aver that Carter had an excellent reputation for being non-violent and law-abiding. *See* N.T., 7/17/13, at 34-35. The trial court instructed the jury to weigh and consider the evidence of good character along with all of the other evidence in the case. *See* N.T., 7/18/13, at 14.

Accordingly, because trial counsel's use of stipulations for character evidence was a strategic decision left to counsel's discretion, this issue is without merit.

In his tenth issue on appeal, Carter argues trial counsel was ineffective for failing to effectively cross-examine a Commonwealth witness, William Deas, regarding an inconsistent statement he made prior to trial. Specifically, Carter contends trial counsel should have impeached Deas's testimony with an email he wrote to Club Onyx on February 29, 2012. The contents of that email read as follows:

> At the closing of the club at 2am on the day in question, [I] asked
> the patron known as "E" (he is the guy who got shot) to exit the

club because [it was] closing time. E asked me to give him a few minutes, because he ordered food and wanted to finish it[. I] gave him some time and once he finished his food [I] walked him to the door. I led "E" outside on the porch and E said a few words to me about the guard that was on the porch. E and [Shanheed] (the armed guard) got into a verbal confrontation. E became very aggressive, he threatened [Shanheed] and tried to force his way [past] me. E was with another guy who was trying to get [past] me to get to the armed guard. [I] pushed them both back then E got really aggressive and tried to move me, at that point [I] grabbed E by his shirt and forced him back and told him to keep moving [off] the grounds. As soon as [I] moved E back [I] heard a shot and E was down… The shot came from behind me so [I] did not see who took the shot. [M]y eyes were on E…

Appellant's Brief, at Exhibit H.

During trial, in addition to claiming self-defense, Carter also argued that he fired his gun because Brock was reaching towards a female guard, Dorenda Wicker, and Carter believed Brock could obtain Wicker's firearm and hurt her. Carter contends the above email would have bolstered the reasonableness of his concern for the physical safety of Wicker, who he claims is the "armed guard" mentioned in the email. However, the email clearly names Shanheed Perrin as the "armed guard" referenced in the email. Accordingly, this contention has no merit.

In his eleventh issue on appeal, Carter contends trial counsel was ineffective for failing to meet a minimum standard of effective performance. Carter relies on **Commonwealth v. Brooks**, 839 A.2d 245 (Pa. 2003) for his contention that trial counsel was ineffective for failing to investigate and properly prepare for trial.

In **Brooks**, our Supreme Court found that an attorney's failure to meet, in person, with a defendant facing a trial on capital charges amounted to ineffective assistance of counsel. **See id**. at 249 ("Indeed, the very nature of a capital case, typically quite involved and always subjecting the defendant to the possibility of death, clearly necessitates at least one in-person meeting between a lawyer and his client before trial begins.").

Brooks was charged with first degree murder and the Commonwealth sought the death penalty. **Id**. at 247. Counsel failed to meet with the defendant "even once before his trial on capital charges." **Id**. at 250. Instead, counsel could only "specifically recall one telephone conversation" which lasted about twenty to thirty minutes. **Id**. at 249. Our Supreme Court concluded counsel's lack of contact with the defendant had no reasonable basis, prejudiced the defendant, and found the conduct amounted to ineffective assistance of counsel. **Id**.

Carter's reliance on **Brooks** is misplaced. In **Brooks**, counsel failed to meet with the defendant, even once, prior to trial on capital charges, instead only having one brief phone conversation. **Id**. at 247-50. As such, **Brooks** stands for the proposition that counsel representing a defendant facing the death penalty is ineffective for completely failing to meet with a client in person before trial.

Conversely, in the case at hand, Carter was not facing the death penalty. Further, trial counsel met with Carter, in person, prior to trial. Counsel met

- 23 -

with Carter for ninety minutes. Carter does identify alleged failures by counsel that were the result of counsel's failure to adequately prepare for trial. However, these alleged failures were all raised by Carter as independent claims of ineffective assistance of counsel. As we have concluded none of these allegations merit relief, Carter is due no relief on this issue.

Finally, Carter contends the cumulative effect of trial counsel's numerous ineffective acts and omissions deprived him of a fair trial and his due process rights.

Our Supreme Court has emphasized:

We have often held that no number of failed [] claims may collectively warrant relief if they fail to do so individually. However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed.

*Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011) (citations and internal quotation marks omitted).

Here, while we found some of Carter's claims failed due to lack of prejudice, we concluded many of them failed for lack of arguable merit. As far as those claims where we cited lack of prejudice, we find there is no cumulative prejudice warranting relief, as these claims are independent and distinct. They did not warrant relief individually, and did not prejudice Carter in the aggregate. Nor is there a basis for cumulative error with regard to the

remainder of Carter's claims which we denied based on lack of arguable merit. Carter is not entitled to relief on his final claim.

As none of Carter's issues merit relief, we find the PCRA court did not err in denying Carter's PCRA petition and affirm the order denying relief.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2023